[No. 79529-1.   En Banc.]
Argued November 27, 2007.     Decided March 13, 2008.

JACK OLTMAN, *Individually and as Executor*, ET AL.,
*Petitioners*, v. HOLLAND AMERICA LINE USA,
INC., ET AL., *Respondents*.

*Noah C. David* (of *In Pacta, PLLC*), for petitioners.

*John P. Hayes* and *Jeremy H. Rogers* (of *Forsberg & Umlauf, PS*), for respondents.

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

*Stephen M. Rummage, Kristina S. Bennard, Lawrence W. Kaye, Gerald L. Gorman*, and *Aksana Moshiav* on behalf of Cruise Line International Association, amicus curiae.

¶1 MADSEN, J. — Petitioners Jack Oltman and his mother Bernice Oltman[1] were passengers who became ill on a cruise ship sailing from Chile to San Diego. They filed suit against respondents Holland America Cruise Line USA, Inc., and Holland America Line, Inc. (hereafter Holland America) in King County Superior Court, asserting several causes of action. Petitioner Susan Oltman, who was not a passenger on the ship, asserted a claim for loss of consortium. The trial court granted summary judgment to the respondents on the basis that a forum selection clause in the cruise contracts requires that suit be brought in the United States District Court for the Western District of Washington. The Court of Appeals affirmed. We conclude that summary judgment was improperly granted on the loss of consortium claim, but in other respects we affirm the Court of Appeals.

---

[1] Bernice Oltman passed away while this case was on appeal. Her estate has been substituted as a party.

## FACTS

¶2 Jack Oltman booked a cruise on the luxury cruise ship *ms Amsterdam* through Vacations to Go in Houston, Texas, on March 18, 2004, 13 days before the ship was to sail from Valparaiso, Chile, to San Diego, California. Jack and Bernice each received a "Cruise and CruiseTour Contract," and a "Cruise Ticket."[2] Jack stated in his declaration that they received their travel documents either approximately six days before boarding or at the time they boarded. The Oltmans contend that they had no "opportunity to review the fine print in the travel documents." Pet. for Review at 5. Uncontroverted evidence shows that Jack and Bernice could not have boarded the *ms Amsterdam* without presenting their Cruise and CruiseTour Contracts (with their Cruise Tickets).

¶3 Although Jack and Bernice have not submitted complete copies of their travel documents, they did submit copies of their Cruise Tickets. An exemplar of the complete travel documents was submitted by Holland America.[3] The cruise ticket is denominated as a "Cruise and CruiseTour Contract" and contains a forum selection clause designating the federal district court in western Washington as the chosen forum, with the sole exception being that King County courts are the chosen forum where the federal court lacks subject matter jurisdiction. The contract also contains contractual limitations periods, providing that notice of injury must be provided to Holland America within six months of the injury, and providing a one-year limitations period in which to file a lawsuit, running from the date of injury.

¶4 The *ms Amsterdam* was scheduled to depart from Valparaiso on March 31, 2004, and arrive in San Diego at 8

---

[2] For clarity's sake, we will sometimes refer to the petitioners by their first names. We mean no disrespect.

[3] The pagination of the exemplar appears to be different from the documents that Jack and Bernice received, based on the portions they submitted, but there is no evidence showing that the relevant content of the documents varied.

a.m. on April 17, 2004. Jack and Bernice boarded the ship March 31. Sometime after they boarded, a severe gastrointestinal disease broke out and infected a number of passengers on board, resulting in an announcement about the illness by the ship's captain and issuance of a health notice. The Oltmans maintain that because none of the passengers were quarantined, the virus continued to be transmitted from passenger to passenger. Toward the end of the cruise, Jack and Bernice allege, they contracted the gastrointestinal illness and began to experience severe symptoms. Although the exact dates of the onset of their illnesses have not been established, the record shows that on April 16, 2004, each consulted with the ship's medical staff. Insurance claim forms in connection with these consultations show that Jack's visit was a "followup exam" for gastritis, Clerk's Papers (CP) at 45, and that Bernice's visit was a "consult—no exam" and that she was diagnosed with gastroenteritis, CP at 46.

¶5 On March 30, 2005, plaintiffs Jack, Bernice, and Susan Oltman filed suit in King County Superior Court against Holland America. Jack and Bernice asserted claims of negligence, breach of contract, and fraud. Susan asserted a claim for loss of consortium. The plaintiffs served Holland America on April 1, 2005. Thirty-one days after service of the complaint, on May 2, 2005, Holland America served their answer (filed April 29, 2005) on the Oltmans, past the 20-day time limit of CR 12(a)(1) for serving an answer. In the answer, Holland America asserted the forum selection clause, improper venue, and other contract limitations as affirmative defenses. The plaintiffs filed a motion to strike the affirmative defenses, claiming that an affirmative defense is waived when asserted in an untimely answer. The trial court denied the motion. Holland America then moved for summary judgment based solely on the forum selection clause. The trial court granted the motion. The Court of Appeals affirmed. *Oltman v. Holland Am. Line USA, Inc.*, 136 Wn. App. 110, 148 P.3d 1050 (2006). The Oltmans' petition for review was granted.

## ANALYSIS

■■■■ ¶6 We review a grant of summary judgment de novo. *Beaupre v. Pierce County*, 161 Wn.2d 568, 571, 166 P.3d 712 (2007). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). Some of the issues involve discretionary rulings by the trial court, such as a ruling on a motion to strike an attorney's declaration, and these are generally reviewed under an abuse of discretion standard.[4]

¶7 The first issue is whether, as the Oltmans claim, Holland America waived its affirmative defenses. There is no dispute that Holland America's answer to the complaint was served 31 days after service of the complaint, 11 days beyond the 20-day period allowed under CR 12(a)(1). The Oltmans ask the court to hold that affirmative defenses are waived if they are asserted in an untimely answer and the late assertion causes actual prejudice to the plaintiff. They claim they were prejudiced because if the forum selection clause defense had been raised in a timely answer, then they would have been able to refile their complaint in federal court in conformity with the forum selection clause within the one-year contractual limitations period.

¶8 The Court of Appeals held that the waiver issue was not preserved because the plaintiffs did not claim prejudice in the trial court. *Oltman*, 136 Wn. App. at 115. However, contrary to the Court of Appeals' view, the Oltmans did claim prejudice in response to Holland America's motion for summary judgment. Then, as now, they argued prejudice

---

[4] The Oltmans contend, however, that under *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 161 P.3d 1016 (2007), a de novo standard of review applies to all questions relating to the forum selection clause because they are questions of law. In *Dix* we held that ordinarily an abuse of discretion standard applies to a trial court's determination on the validity of a forum selection clause, but if a pure question of law is presented such as whether a forum selection clause is against public policy, the de novo review standard applies. *Id.* at 833-34. Thus, not all issues relating to a forum selection clause are issues of law. We have indicated the standard of review for a particular issue where relevant.

resulting from assertion of the forum selection clause defense in the late answer.

¶9 A trial court's denial of a motion to strike an affirmative defense is a discretionary ruling that we review for abuse of discretion. *Phillips v. Richmond*, 59 Wn.2d 571, 574-75, 369 P.2d 299 (1962); *see King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994). A defendant shall serve the answer no more than 20 days after service of the complaint. CR 12(a)(1). Affirmative defenses "shall be asserted in the responsive pleading," or, alternatively, a defendant may assert lack of subject matter or personal jurisdiction, improper venue, insufficient process, insufficient service, failure to state a claim, or failure to join a party in a motion filed under CR 12(b). CR 12(b). An affirmative defense of improper venue is waived if not made by motion under the rule or included in a responsive pleading. CR 12(h)(1).

¶10 Conceding that there is no state case law holding that an affirmative defense is waived if not asserted in the answer, the Oltmans nonetheless rely on CR(h)(1), viewing the forum selection clause defense as the same thing as improper venue[5] and citing Washington appellate cases holding that a defense is waived if not included in the answer. But here Holland America did assert its affirmative defenses in its answer. Nothing in the rule or the state cases supports the conclusion that asserting an affirmative defense in an untimely answer constitutes waiver.

¶11 As Holland America maintains, a number of federal courts hold that an affirmative defense is not waived merely because it is asserted in a late response. *E.g., Breland v.*

---

[5] *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 622-25, 937 P.2d 1158 (1997), supports the Oltmans' equation of the forum selection clause defense to a claim of improper venue. This court has noted that some federal courts have treated a motion to dismiss under a forum selection clause as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), others as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), and others as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Dix*, 160 Wn.2d at 833 n.5. We do not find it necessary in this case to decide this question.

*ATC Vancom, Inc.*, 212 F.R.D. 475, 477 (E.D. Pa. 2002) (rejecting plaintiffs' argument that the defendant waived the right to assert a defense of improper venue when the defendant filed its response to the complaint 11 days late); *Foss v. Klapka*, 95 F.R.D. 521, 522 (E.D. Pa. 1982) (defense of lack of personal jurisdiction is not waived when asserted in the first response to a complaint filed over 20 days after service of the complaint). Some courts have concluded, to the contrary, that an affirmative defense is waived if asserted in an untimely response. *E.g., Granger v. Kemm, Inc.*, 250 F. Supp. 644 (E.D. Pa. 1966) (answer under Fed. R. Civ. P. 12(a) is required within 20 days after service of the complaint and unless an objection to venue is made either in the answer or by motion within this 20-day period, the objection to venue is waived; defendant's motion to dismiss on improper venue grounds was waived where it was filed 55 days after service of the complaint). But a leading treatise notes that the conclusion that a defense of improper service or venue is waived if asserted in an untimely response "is premised on an overly strict interpretation" of the rules, which do not provide for waiver in these circumstances. 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391, at 519 (3d ed. 2007). The treatise notes, "[t]here do not appear to be any recent cases applying the Rule 12(a) benchmark for waiver." *Id.* at 519-20.[6]

¶12 Nevertheless, Amicus Curiae Washington State Trial Lawyers Association Foundation (WSTLAF) argues,

---

[6] The Oltmans rely on a few federal cases that are inapposite. *See Bavouset v. Shaw's of S.F.*, 43 F.R.D. 296 (S.D. Texas 1967) (defendant's motion to dismiss on the ground of lack of personal jurisdiction was denied because it was not timely filed by motion or answer and therefore waived, *having been filed after the defendant was in default*); *Zwerling v. N.Y. & Cuba Mail S.S. Co.*, 33 F. Supp. 721 (E.D.N.Y. 1940) (a defendant *who is in default* and who the court allows to answer on the merits waives all defenses or objections to the complaint, including any Fed. R. Civ. P. 12(b) defenses that are capable of being waived (citing Fed. R. Civ. P. 12(h))); *Rivera v. Anaya*, 726 F.2d 564 (9th Cir. 1984) (absent prejudice to the plaintiff, a defendant may raise an affirmative defense *in a motion for summary judgment for the first time*; no prejudice shown); Order Granting in Part Def.'s Mot. for Summ. J., *Lexington Ins. Co. v. Swanson*, No. CO5-1614MJP, 2007 WL 1585099 (W.D. Wash. May 23, 2007) (same).

in support of the Oltmans' claim, that waiver should be found if an affirmative defense is filed in a late answer and the delay causes actual prejudice to the plaintiff, adding that this principle should be applied where the defendant knows or should know that prejudice would result. WSTLAF premises its argument on *Lybbert v. Grant County*, 141 Wn.2d 29, 1 P.3d 1124 (2000), where the plaintiffs properly filed a summons and complaint but failed to serve it correctly on the defendant Grant County.

¶13 We reasoned that under the common law doctrine of waiver, waiver of affirmative defenses can occur under certain circumstances in two ways: if the defendant's assertion of the defense is inconsistent with the defendant's previous behavior and if defendant's counsel has been dilatory in asserting the defense. *Id.* at 38-39. We found waiver of the affirmative defense of insufficiency of service of process because the county engaged in conduct inconsistent with asserting the defense and was dilatory in filing its answer. *Id.* at 41-45; *see also King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 563 (2002).

¶14 WSTLAF argues the dilatory defense prong of *Lybbert* should be applied here and Holland America should be deemed to have waived the forum selection clause defense if its delayed answer resulted in actual prejudice to the Oltmans.

■ ¶15 We need not decide whether an affirmative defense raised in an untimely answer is waived if the delay in raising the defense causes prejudice to the plaintiff because no prejudice is established in this case. As noted, the Oltmans claim prejudice resulted from the late assertion of the forum selection clause defense because, if it had been asserted in a timely fashion, then, they argue, they would have been able to refile their suit in federal court in conformity with the clause. But the forum selection clause appears in the cruise contracts that Jack and Bernice received in March 2004.

¶16 Moreover, as Holland America correctly argues, the timing of the complaint in state court left too little time to

correct the filing mistake in any event. The 20-day period to file the answer ended April 21, 2005, since the complaint was served April 1. Even if the alleged injuries did not occur until the very last day of the cruise, April 17,[7] the one-year limitation period would have expired Monday, April 18, 2005. *See* CR 6.[8] Holland America could have filed a timely answer on April 19, 20, or 21—already too late for the Oltmans to refile in federal court. Thus, the Oltmans cannot show prejudice resulting from the untimely answer.

¶17 We hold that the trial court did not abuse its discretion in denying the motion to strike the affirmative defenses.

¶18 The next issue is whether the trial court abused its discretion when it denied the Oltmans' motion to strike a declaration submitted by one of Holland America's attorneys. The attorney stated that he had been counsel or cocounsel in a number of cases where the same forum selection clause at issue here was found valid by the courts. He cited the cases and appended copies of the decisions as evidence that other courts had found the clause valid. Some of the decisions were orders from King County Superior Court, which are unpublished, and others were unpublished decisions from federal district court. The Oltmans contend citation and inclusion of the unpublished decisions was improper and prejudicial because they were meant to influence the trial judge to take the same position as her judicial colleagues. They seek reversal and remand.

¶19 The abuse of discretion standard applies to review of a trial court's decision on a motion to strike a declaration or affidavit allegedly containing inadmissible evidence. *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 591, 973 P.2d 1011 (1999).

¶20 The Oltmans rely on former RAP 10.4(h) (2006), but this rule does not apply here because it barred citing

---

[7] As mentioned, Jack and Bernice consulted with the ship's medical staff on April 16, 2004.

[8] Holland America says the time would have expired on April 17, 2005; however, April 17 was a Sunday.

unpublished Court of Appeals opinions in the appellate courts and Holland America cited unpublished decisions of trial courts in trial court. The Oltmans also rely on *Johnson v. Allstate Insurance Co.*, 126 Wn. App. 510, 108 P.3d 1273 (2005) and *St. John Medical Center v. Department of Social & Health Services*, 110 Wn. App. 51, 61 n.5, 38 P.3d 383 (2002). Each is distinguishable. In *Johnson*, 126 Wn. App. at 519, the court said that the defendant and the trial court improperly relied on an unpublished Court of Appeals opinion, but the only remedy available to the plaintiffs was sanctions and because the unpublished decision was not cited to the Court of Appeals, it was unable to impose sanctions. In *St. John Medical Center*, 110 Wn. App. at 61 n.5, the court refused to consider an unpublished trial court decision. Neither case involved citation of unpublished trial court decisions to a trial court.

¶21 Like the Court of Appeals, we have disapproved citing unpublished decisions. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 577 n.10, 964 P.2d 1173 (1998) (trial court decisions cited to this court); *Dahl-Smyth, Inc. v. City of Walla Walla*, 148 Wn.2d 835, 839 n.4, 64 P.3d 15 (2003) (unpublished Court of Appeals opinions are not precedential in the appellate courts).[9]

¶22 Plaintiffs cite no relevant authority for the proposition that it is improper to cite unpublished opinions to a trial court. Insofar as the analysis in another trial judge's decision might be helpful, there is no rule or precedent that bars its consideration by a trial judge. Further, trial judges can be presumed to know that other trial court rulings are not precedential.

---

[9] Former RAP 10.4(h) (2006) stated that "[a] party may not cite as an authority an unpublished opinion of the Court of Appeals." GR 14.1, effective September 1, 2007, continues to provide that unpublished Court of Appeals opinions may not be cited as authority. It also provides that unpublished decisions from other jurisdictions may be cited only if the other jurisdiction allows citation of unpublished decisions. GR 14.1 did not apply at the time the trial court denied the Oltmans' motion to strike the declaration.

¶23 The trial court did not abuse its discretion in declining to strike the declaration citing unpublished trial court decisions.

¶24 We turn to the question whether Susan Oltman's loss of consortium claim was properly dismissed on summary judgment. The Oltmans maintain that because she was not a party to the contract, did not sign it, and was not a passenger on the cruise, the trial court erred in dismissing Susan Oltman's loss of consortium claim on summary judgment.[10] They point out that under Washington law a loss of consortium claim is a separate, not a derivative, claim.

¶25 The Court of Appeals affirmed the trial court's dismissal, reasoning that although loss of consortium is not a derivative claim, an element of the loss of consortium cause of action is the tort committed against the spouse who was injured. *Oltman*, 136 Wn. App. at 126 (quoting *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 853, 728 P.2d 617 (1986)). The court also reasoned that the cruise contract states that it applies to any dispute or matter arising under or in connection with or incident to the contract and the cruise, and said that Susan's claim is not separate from the alleged injury to Jack Oltman while on the cruise but instead arises under and in connection with the cruise. *Id*. The court held the contract, and thus the forum selection clause, applies to her. *Id*.

¶26 The contract to which Susan is allegedly bound expressly states it is a "legally binding contract *between you and us.*" CP at 109 (emphasis added) (capitalization omitted). The contract defines "the words 'we' and 'us' " as "the owner, [Holland America Line (HAL)] and the other HAL companies." *Id*. The contract defines "the word 'you' " as "all

---

[10] They also complain that the trial court did not enter findings of fact and conclusions of law to support its holding (they repeat this complaint as to other issues), but findings and conclusions are inappropriate on summary judgment. *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991) ("findings of fact on summary judgment are not proper, are superfluous, and are not considered by the appellate court"); *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1987).

persons traveling under this contract including their heirs, successors in interest and personal representatives." *Id.* Susan Oltman did not travel under the contract, nor is she an heir, successor in interest, or personal representative of a person traveling under the contract. By its express terms, the cruise contract does not apply to nor purport to bind her. A forum selection clause is not binding on a third party who did not agree to the contract in which the clause is found. *Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank,* 115 Wn.2d 307, 321-22, 796 P.2d 1276 (1990); *State ex rel. Elec. Prods. Consol. v. Superior Court,* 11 Wn.2d 678, 679, 120 P.2d 484 (1941); *State ex rel. Lund v. Superior Court,* 173 Wash. 556, 558, 24 P.2d 79 (1933). Susan Oltman did not sign the cruise contract, nor did she agree to its terms. Nor has any argument been made, and none appears from the record, that there is an alternative basis for her to be subjected to the contract, such as a third party beneficiary theory.

¶27 Susan Oltman is simply not bound by the contract and therefore is not bound by the forum selection clause. The fact that Jack's injury, and the wrongdoing of Holland America in connection with that injury, are components of Susan's loss of consortium claim makes no difference. In *Lund v. Caple,* 100 Wn.2d 739, 744, 675 P.2d 226 (1984), we held that the "deprived" spouse may sue for loss of consortium by either joining in a lawsuit with the injured spouse or by bringing an independent suit. The loss of consortium claim is separate and independent rather than derivative. *Green v. A.P.C.,* 136 Wn.2d 87, 101, 960 P.2d 912 (1998); *Reichelt v. Johns-Manville Corp.,* 107 Wn.2d 761, 776, 733 P.2d 530 (1987). Under state law, a loss of consortium claim is not barred simply because no claim can be brought based on the injury of the injured spouse. For example, the statute of limitations begins to run on a loss of consortium claim when the deprived spouse experiences injury, not when the injured spouse is injured. *Reichelt,* 107 Wn.2d at 776. Timeliness of the injured spouse's claim does not necessarily determine the deprived spouse's loss of consortium claim. *Id.*

¶28 Holland America relies, however, on federal cases holding that spouses of passengers injured on a ship were bound by the terms of cruise contracts. All of the cases that Holland America relies on rest on the analysis in *Miller v. Lykes Brothers Steamship Co.*, 467 F.2d 464 (5th Cir. 1972), in which the court held that a one-year contractual time bar in a passenger contract that barred a wife's claim operated equally to bar the husband's claim for loss of consortium. The court noted that the husband's losses may have conceptually occurred subsequent to his wife's injuries, and that courts have found a spouse's loss of consortium claim to be separate from the other spouse's physical injury, i.e., a distinct cause of action. *Id.* at 466. But the court's analysis centered on contract interpretation of the term "injury" in the contractual limitation provision that was at issue. The court reasoned that, under a commonsense reading, claims for bodily injury as well as claims derivative of that bodily injury must be filed within a year from " 'such injury.' " *Id.* at 467. The court said that "[f]ine distinctions between claims for bodily injury and claims for loss of services caused by the injury only obscure the plain meaning of the contract and leave the parties in doubt as to their contractual rights." *Id.*

¶29 However, in *Miller,* both spouses were passengers subject to the contract.[11] Cases that Holland America cites to this court also involve both spouses as passengers subject to the passenger contract. *See Lieb v. Royal Caribbean Cruise Lines, Inc.*, 645 F. Supp. 232, 235 (S.D.N.Y. 1986); Mem. & Order, *Natale v. Regency Mar. Corp.*, No. 94 CIV. 0256, 1995 WL 117611, at *3 , 1995 U.S. Dist. LEXIS 3413 (S.D.N.Y. Mar. 17, 1995). In another case relied on by Holland America, *Schenck v. Kloster Cruise Ltd.*, 800 F. Supp. 120, 124 (S.D.N.J. 1992), it is not clear whether both spouses were passengers, but the court treated the husband's claim as derivative and, insofar as the limitations

---

[11] While Holland America cited *Miller* to the Court of Appeals, it does not cite it to this court.

period was concerned, relied completely on the analysis in *Miller*.

¶30 Because all of the cases ultimately rest on *Miller*, and all but one involve situations where both spouses were parties to the passenger contracts, they are not persuasive on the issue here—whether a spouse who is a third party vis-à-vis a cruise contract and who asserts a separate, independent claim (not a derivative claim) for loss of consortium is bound by the forum selection clause in the contract.

¶31 We hold that Susan Oltman's loss of consortium claim is not subject to the forum selection clause and therefore the trial court erred in dismissing on summary judgment her claim based on the forum selection clause. We express no opinion on the issue whether the loss of consortium claim is nevertheless barred under federal maritime law because the issue whether loss of consortium damages is a cognizable claim under federal law was not part of the summary judgment proceedings.

¶32 Susan Oltman's loss of consortium claim is remanded to the trial court for further proceedings.

¶33 The Oltmans next maintain that the forum selection clause in the cruise ship contract is invalid and unenforceable. We agree with the Court of Appeals that federal maritime law controls these questions. Article III, section 2 of the United States Constitution extends federal judicial power "to all cases of admiralty and maritime jurisdiction." A case involving a forum selection clause in a passenger cruise line ticket contract is "a case in admiralty, and federal law governs the enforceability of the forum-selection clause." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991); *see The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427, 18 L. Ed. 397 (1867); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2d Cir. 1995); *Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905, 909 (3d Cir. 1988), *overruled on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989); *Wallis v. Princess Cruises,*

*Inc.*, 306 F.3d 827, 834 (9th Cir. 2002). Such a clause is prima facie valid. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). A party challenging the enforceability of a forum selection clause bears the heavy burden of establishing enforcement would be unreasonable. *Id.* at 17.

¶34 Although the Oltmans complain that the forum selection clause was not the subject of negotiation, the United States Supreme Court has rejected the argument that a nonnegotiated forum selection clause is never enforceable simply because it was not negotiated. *Carnival Cruise Lines*, 499 U.S. at 595. A forum selection clause in a form passage contract is, however, "subject to judicial scrutiny for fundamental fairness." *Id.* Some factors to consider in assessing for fundamental fairness are whether there is any indication the selected forum was chosen to discourage legitimate complaints, whether there was any evidence of fraud or overreaching, and whether the passengers were sufficiently on notice of the clause and had the option of rejecting it. *Id.* In *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 834-35, 161 P.3d 1016 (2007), this court provided a typical synthesis of the *Bremen* and *Carnival Cruise Line* line of cases, which also establish, in relevant part, that a forum selection clause can be found to be unenforceable if the party challenging enforceability establishes that the contractually selected forum is so unfair and inconvenient that the plaintiff is essentially denied his day in court or that enforcement would contravene strong public policy of the state where the action is filed.

¶35 Turning first to the question of the fundamental fairness of contractual limitations in cruise ship contracts, many federal courts, including the Ninth Circuit Court of Appeals, employ a " 'reasonable communicativeness' " test to determine if a clause is fundamentally fair. *Wallis*, 306 F.3d at 835-36. Under this two-part analysis, the court considers (1) whether the physical characteristics of a cruise ship contract reasonably communicate the existence of the terms and conditions at issue and (2) whether the

circumstances surrounding the purchase of the ticket contract and subsequent retention of it allowed the passenger to become meaningfully informed of its contents. *E.g., Shankles v. Costa Armatori*, 722 F.2d 861, 864-66 (1st Cir. 1983); *Ward v. Cross Sound Ferry*, 273 F.3d 520, 524-25 (2d Cir. 2001); *Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 219 (6th Cir. 1983); *Dillon v. Admiral Cruises, Inc.*, 960 F.2d 743, 744-45 (8th Cir. 1992); *Wallis*, 306 F.3d at 835-36. Whether a contractual provision in a cruise ship contract is reasonably communicated is a question of law for the court. *Ward*, 273 F.3d at 523; *Valenti v. Home Lines Cruises, Inc.*, 614 F. Supp. 1, 5 (D.N.J. 1984).

¶36 Considerations under the first prong of this test include the conspicuousness of the clause at issue, font size, clarity of the term, and the ease with which a passenger can read the provisions. *Wallis*, 306 F.3d at 836.

¶37 Here, the index to the travel documents lists "contract" and directs the passenger to read it. The first page of the contract itself conspicuously states in large, bold capital letters that the document is a binding contract. The same designation appears later in the document. The designated "Passenger's Copy" states that it embodies "Terms and Conditions." CP at 304.[12] Immediately below the passenger's cabin number on the copy is stated in capital letters: "ISSUED SUBJECT TO THE TERMS AND CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES. READ TERMS AND CONDITIONS CAREFULLY." *Id*. The terms and conditions that follow include the forum selection clause and the limitations period clause. The forum selection clause is printed in capital letters on the same page that is headed "IMPORTANT NOTICE TO PASSENGERS."

---

[12] The Oltmans argued in their brief to the Court of Appeals that there is a factual question about whether the tickets warn that the cruise contract contains terms and conditions. They cited to what appear to be copies of their tickets lacking these terms. CP at 287, 288. However, the record also contains copies of both Jack Oltman's and Bernice Oltman's "passenger's copies" of their tickets, and these copies do have the clear warning that the documents contain terms and conditions of the cruise contract. CP at 150 (Bernice's ticket); CP at 304 (Jack's ticket).

CP at 109. In addition, the contract explicitly directs the passenger's attention to certain paragraphs that limit legal rights. Also, the forum selection clause is the first substantive term following the itinerary.

¶38 The first prong of the test is satisfied. The second prong concerns circumstances surrounding the passenger's purchase of the ticket and subsequent retention. The question here is whether the passenger had the opportunity to become meaningfully informed of the contractual limitations. *Wallis*, 306 F.3d at 836. For example, in a case where the passenger was issued a ticket bearing the terms of limitations just moments before boarding and then the entire ticket was collected upon boarding, the court held that possession of the ticket for such a short time was insufficient to give reasonable notice that the ticket contained important contractual limitations. *Ward*, 273 F.3d at 524-25.

¶39 The Oltmans maintain that viewing the facts in the light most favorable to them, the nonmoving parties, Jack and Bernice did not receive their travel documents, including the cruise contracts, until they boarded the ship for departure. The fact that the passenger held the ticket a short time before boarding is not dispositive, however. Courts have held that passengers had sufficient notice of limitations clauses in cruise contracts where the passenger received them a short time before sailing provided they had the opportunity to review them. *E.g., Roberson v. Norwegian Cruise Line*, 897 F. Supp. 1285 (C.D. Cal. 1995); *Hodes*, 858 F.2d 905. The focus is not so much on the length of time the passenger had before or after the cruise, but instead on whether the passenger had a reasonable time to review the ticket contract terms.[13] Retention of the ticket and time to

---

[13] Courts have enforced forum selection clauses if the plaintiffs had a reasonable opportunity to review their contents even if the plaintiffs would have forfeited part of the ticket price or paid a cancellation fee if they decided to reject the cruise ticket terms. *E.g., Cross v. Kloster Cruise Lines, Ltd.*, 897 F. Supp. 1304, 1308-09 (D. Or. 1995) ($400 penalty); *Miller v. Regency Mar. Corp.*, 824 F. Supp. 200, 203 (N.D. Fla. 1992) (40 percent of fare; no evidence to suggest the defendants waited to mail the ticket until such time that the plaintiff would be subject to

review it have been considered significant. In *Kendall v. American Hawaii Cruises*, 704 F. Supp. 1010, 1016 (D. Haw. 1989), passengers who held the contract over a year from the date of the injury had ample time to familiarize themselves with the terms of the ticket contract and its one-year limitation on the time to sue. *See also Marek v. Marpan Two, Inc.*, 817 F.2d 242, 247 (3d Cir. 1987) (passenger received ticket moments before boarding and failed to read within six months of injury).

¶40 Both Bernice and Jack declared they had no opportunity to review the documents, however. But no explanation is offered as to why they had no opportunity. Moreover, the Oltmans have offered no objective evidence that if they had read the contract, they would have canceled their cruise. And most significantly, as Holland America contends, the Oltmans' argument that the second prong of the test is not met is based on circumstances of their own creation. Jack Oltman did not book the cruise until 13 days before the ship sailed.[14]

¶41 *Casavant v. Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 829 N.E.2d 1171 (2005), on which the Oltmans heavily rely, is distinguishable. In *Casavant* the plaintiffs bought their tickets a year before departure, but the cruise line delayed sending the tickets and the plaintiffs received

forfeiture if she cancelled); *Norwegian Cruise Line, Ltd. v. Clark*, 841 So. 2d 547, 550 n.2 (Fla. Dist. Ct. App. 2003) (forfeiture amount not controlling; observing that the majority view is that forum selection clauses are enforceable where the plaintiff has adequate notice, despite a cancellation fee); *Thomas v. Costa Cruise Lines N.V.*, 892 S.W.2d 837, 842 n.2 (Tenn. Ct. App. 1994) (25 percent penalty). *But see Corna v. Am. Haw. Cruises, Inc.*, 794 F. Supp. 1005 (D. Haw. 1992) (where passengers received their ticket just a few days before departure and would stand to forfeit their entire purchase price and be subject to penalties (several thousand dollars) if they rejected the ticket contract, the forum selection clause was held to be unfair and unenforceable).

[14] In addition, Jack Oltman said he booked the trip through a travel agency, and courts have held that a travel agency is the agent of the passenger and the passenger is charged with notice of the provisions in a cruise contract in the hands of the passenger's agent. *E.g., Hodes*, 858 F.2d at 911-12; *Catalana v. Carnival Cruise Lines, Inc.*, 618 F. Supp. 18 (D. Md. 1984), *aff'd*, 806 F.2d 257 (4th Cir. 1986); *cf. DeCarlo v. Italian Line*, 416 F. Supp. 1136, 1137 (S.D.N.Y. 1976) (passenger who never read ticket was held to its contents where it was purchased by a friend); *Rogers v. Furness, Withy & Co.*, 103 F. Supp. 314, 316-17 (W.D.N.Y. 1951) (same).

them 13 days before sailing. The cruise line caused the delay, not, as in this case, the plaintiffs. Also, in *Casavant* the plaintiffs cancelled the trip under extraordinary circumstances because they were scheduled to depart right after the September 11 terrorist attacks and reasonably feared traveling. *Id.* at 799. Here, in contrast, Jack and Bernice Oltman took the cruise and now seek to set aside the contact after it has been fully performed.

¶42 The second prong of the reasonable communicativeness is satisfied, especially because delay in obtaining the tickets was plaintiffs' doing.

¶43 The Oltmans also contend that the forum selection clause is against public policy and so seriously inconvenient as to deprive them of their day in court.[15] In *Dix*, as mentioned, the court concluded that a forum selection clause may be found unreasonable if the contractually selected forum is so unfair and inconvenient that, for all practical purposes, it deprives the plaintiff of his day in court, or if enforcement would contravene a strong public policy of this state. The Oltmans reason that (1) they were dismissed on summary judgment in state court due to the forum selection clause, (2) then the federal court dismissed their action because the contractual limitations period had run, and (3) the forum selection clause does not satisfy any of the rationales given in *Carnival Cruise Lines* for the Court's holding there that the forum selection clause in a cruise line passage contract ticket was reasonable and enforceable.

¶44 However, at the heart of this complaint is the contractual one-year limitations period in the cruise contract. It is not the forum selection clause so much as the shortened time limit that prevented the Oltmans from proceeding in federal court after their dismissal in state court.

---

[15] In the Court of Appeals, the Oltmans contended that the contract was procured by fraud. They did not raise this issue in their petition for review, as they expressly concede in their Supplemental Brief at 2 n.1. Thus, although they reference the fact they have asserted the tort of fraudulent inducement, no issue is before this court with respect to any alleged fraud.

¶45 Moreover, the Oltmans' argument that the forum selection clause here does not satisfy the rationales in *Carnival Cruise Lines* is not persuasive. In *Carnival Cruise Lines* the Court rejected the Ninth Circuit's reasoning that a nonnegotiated forum selection clause in a cruise contract is never enforceable because it is not the subject of bargaining. The Court identified three rationales that supported enforcing forum selection clauses despite the lack of negotiation. The Court first observed that a cruise line has a special interest in limiting the forums in which it could be sued because a cruise ship typically carries passengers from many locations and, following a mishap, could be subjected to suit in several forums. *Carnival Cruise Lines*, 499 U.S. at 594. The Oltmans say, however, that Holland America would have no financial savings because both forums mentioned in the forum selection clause are in the same city. But this argument fails to account for the fact that there are innumerable other potential forums, such as the home states of all the other passengers and foreign countries such as Chile.

¶46 The Court also reasoned in *Carnival Cruise Lines* that a forum selection clause eliminates confusion about where suit must be brought, thus saving time and expense and conserving judicial resources. *Id.* The Oltmans say that the forum selection clause makes things more confusing, not less, because it attempts to limit plaintiffs to one city, and requires claims to first be filed in federal court and then, only if the federal court lacks jurisdiction, filed in state court. But the "confusion" that the Oltmans refer to is of their own doing. They failed to comply with the forum selection clause and failed to file in the federal court in the first place.

¶47 Finally, the Court in *Carnival Cruise Lines* reasoned that passengers benefit because reduced fares reflect savings enjoyed by the cruise line as a result of limiting the forums in which it could be sued. *Id.* The Oltmans say, however, that by filing in state court and abiding by the contract, they kept the cruise line's costs down. This argu-

ment reflects the Oltmans' erroneous view that they were entitled to file in state court under the savings to suitors clause and could do so and still comply with the forum selection clause. The savings to suitors clause, discussed below, does generally permit a plaintiff to bring in personam admiralty claims in state court, but the forum selection clause did not give the Oltmans the option of suing in state court at the outset. The Oltmans also seem to believe that Holland America must prove it is financially less burdensome to be sued in federal court than in state court. But again, this reasoning overlooks the fact that the more relevant comparison comes from all of the potential forums in which Holland America might be sued. In short, the Oltmans have not shown that the Court's rationales in *Carnival Cruise Lines* are inapplicable here.

¶48 The Oltmans have not established that the forum selection clause deprives them of their day in court and is against public policy.

¶49 We hold that the forum selection clause is valid and enforceable. The Oltmans have not overcome the presumptive validity of the clause.

¶50 The Oltmans contend that under the federal savings to suitors clause, they were entitled to file in state court, and that when they did so, the federal court was deprived of subject matter jurisdiction. That being the case, they reason, they were entitled to file in state court under the exception in the forum selection clause permitting suit to be brought in King County courts if the federal district court lacked subject matter jurisdiction. Their argument is circular.

¶51 The savings to suitors clause, 28 U.S.C. § 1333(1), states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This provision enables a plaintiff to bring an admiralty or maritime claim in state court, i.e., the state and federal courts have concurrent jurisdiction. The

United States Supreme Court has explained that "[t]racing the development of the clause since the Judiciary Act of 1789, it appears that the clause was designed to protect remedies available at common law . . . . Trial by jury is an obvious, but not exclusive, example of the remedies available to suitors." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454-55, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001) (citation omitted). Federal maritime law applies in state court, however. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959). "[T]he 'saving to suitors' clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986).[16] The savings to suitors clause does not guarantee a nonfederal forum. *Morris v. T E Marine Corp.*, 344 F.3d 439, 444 (5th Cir. 2003). If a maritime action is filed in state court, the defendant can remove it to federal court if there is an alternate basis for the federal court to assert jurisdiction, such as diversity. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001).

¶52 While the savings to suitors clause allows for concurrent state and federal jurisdiction over admiralty matters, the Oltmans cite no authority that supports their claim that they were entitled to file in state court under the savings to suitors clause despite the forum selection clause in the cruise contract. The forum selection clause required them to file in federal court in the first instance. Had they done so, the federal court would have jurisdiction and the exception in the forum selection clause providing for suit in the King County courts would simply not apply. The only way they make their argument at all is because they failed

---

[16] An in rem action is within the exclusive jurisdiction of the federal courts.

to comply with the contractual forum selection clause in the first place.

¶53 The Oltmans also contend that Holland America has the burden of establishing that federal jurisdiction is proper and that Holland America has not met this burden. They cite no authority that supports this assertion. In any event, as Holland America maintains, admiralty law applies in personal injury and contract disputes between passengers injured on cruise ships and the cruise ship companies. *Carnival Cruise Lines*, 499 U.S. at 589; *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1403 n.7 (9th Cir. 1994); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). When an alleged tort is committed and injury occurs solely at sea, federal courts have admiralty jurisdiction. *Guidry v. Durkin*, 834 F.2d 1465, 1470 (9th Cir. 1987); *see E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). Had the Oltmans filed in federal court first as the forum selection clause requires, the federal court would have had jurisdiction.

¶54 We hold that the Oltmans were required under the forum selection clause to bring their suit in federal court, which has subject matter jurisdiction over admiralty claims. We reject their contention that they could ignore the forum selection clause and file in state court under the savings to suitors clause, and by this device take advantage of the exception in the forum selection clause permitting them to file in state court if the federal court lacked jurisdiction.[17]

---

[17] The Oltmans also filed a reply to the answer to the petition for review, primarily responding to a footnote in the answer that factually reports the orders issued by the federal court in a suit the Oltmans filed after the state action was dismissed, and to a copy of the federal complaint appended to the answer. The answer does not raise any new issues and a reply is therefore not authorized by the rules of appellate procedure. *See* RAP 13.4(d). We decline to consider it.

## CONCLUSION

¶55 We agree with the Court of Appeals that the trial court did not abuse its discretion in refusing to strike the answer and affirmative defenses and in refusing to strike the declaration of Holland America's attorney that contained citations to unpublished trial court decisions and copies of the decisions. We affirm the Court of Appeals' holding that the forum selection clause is valid and enforceable, and that the Oltmans could not file their suit in state court under the savings to suitors clause and thereby deprive the federal court of jurisdiction when the forum selection clause required them to file in federal court in the first place. We reverse the Court of Appeals' holding that Susan Oltman's loss of consortium claim is governed by the forum selection clause.

¶56 Accordingly, we affirm summary judgment in favor of Holland America on all issues except the loss of consortium claim. We reverse summary judgment on the loss of consortium claim and remand this claim to the trial court for further proceedings consistent with this opinion.

ALEXANDER, C.J.; C. JOHNSON, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and BRIDGE, J. PRO TEM., concur.