**Debra WARD, Plaintiff–Appellant,**

v.

**CROSS SOUND FERRY,
Defendant–Appellee.**

**No. 01–7502.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 2001.

Decided Dec. 10, 2001.

Brian W. McElhenny, Curtis, Vasile, Devine & McElhenny, Merrick, NY, for Plaintiff–Appellant.

Alfred J. Will, Badiak Will & Ruddy, LLP, New York, NY, for Defendant–Appellee.

Before: WALKER, Chief Judge, POOLER and KATZMANN, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Plaintiff-appellant Debra Ward, a resident of New York, appeals from the March 29, 2001 judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *District Judge*) granting summary judgment to defendant-appellee Cross Sound Ferry ("CSF"), a Connecticut company, and dismissing Ward's complaint as time-barred.

On June 23, 1997, Ward fell and injured herself on a gangway while boarding a CSF ferry in New London, Conn., bound

for Orient Point, N.Y. Although Ward's counsel sent a claim letter to CSF within a month of the injuries, no suit was filed until November 1999, some two-and-a-half years after the accident.

After removing the case from state court to federal court on the basis of diversity and admiralty jurisdiction, CSF moved in the district court for summary judgment on the ground that the suit was time-barred. Although a statutory limitations period of three years would otherwise apply to the case, *see* 46 U.S.C.App. § 763a, CSF sought to enforce a contractual time limitation appearing on the back of the passage ticket that required suits to be filed within one year of an injury. A ticket identical to the one received by plaintiff was submitted with CSF's motion. The front of that ticket, which measures about two inches by three-and-a-half inches, reads as follows:

### Cross Sound Ferry

Ticket Good on Date of Issue Only
> Contract: Subject to Terms on Reverse Side

"Cross Sound Ferry" at the top appears to be in fifteen-point bold Times New Roman type and "Ticket Good on Date of Issue Only / Contract: Subject to Terms on Reverse Side" on the bottom appears to be in twelve-point bold Times New Roman type. The writing on the reverse side of the ticket appears to be in seven-point Arial type and reads as follows:

> Terms of Passage Contract Between the Ferry, its Owners and their Employees and Concessionaires ("The Carrier") and passenger: (1) By accepting this contract passenger agrees to its terms. (2) Contract not transferable and valid and refundable only on day issued. (3) Carrier's liability for loss or damage to vehicles or personalty is limited to $500. (4) Carrier is not liable for loss of or damage to vehicles or personalty, or for personal injuries, illnesses or death, unless written notice is given to Owners within six months of the date of the occurrence, and suits on all such claims shall not be maintainable unless commenced within 1 year after the occurrence. (5) All disputes in any way connected with this contract must be litigated in a State Court of New London County, or in the U.S. District Court of Connecticut, Ticketed Vehicles must remain in staging area until boarding. Ferry passage may be denied at the discretion of the "Carrier".

It is undisputed that plaintiff's husband obtained both her ticket and his just two to three minutes before boarding the ferry. Plaintiff, after falling on the gangway, was carried on board by her husband, who simultaneously handed the tickets for both husband and wife to the ticket collector. CSF does not dispute that it typically issues tickets just prior to boarding and collects them upon boarding, and that plaintiff's possession of the tickets for a total of only two to three minutes is not unusual.

Following oral argument on the motion, the district court issued its decision from the bench. Relying on various cases, the district court reasoned that plaintiff had ample time to read the ticket's terms before handing it to the ticket collector while boarding, and that she had ample opportunity to obtain a duplicate ticket after the injury if she had not read the ticket or could not remember its contractual terms. Concluding that Ward's attorney "presumably dropped the ball" in failing to get a duplicate copy of the ticket, the district court upheld the contractual limitation, granted summary judgment for CSF, and dismissed plaintiff's complaint. This appeal followed.

## DISCUSSION

■ We review the district court's grant of summary judgment *de novo*, including the issue of whether a passage ticket "reasonably communicated" contractual limitations imposed by the sea carrier, which is a question of law for the court. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir.1995). Jurisdiction in the district court was properly based on admiralty. *See Kenward v. The Admiral Peoples*, 295 U.S. 649, 651–52, 55 S.Ct. 885, 79 L.Ed. 1633 (1935) (holding that admiralty jurisdiction applied to injury that occurred on gangplank leading to ship).

■ The issue of whether time limitations appearing on a passenger ticket are enforceable is one that arises with surprising regularity, although the particular facts of this case—namely, possession of the ticket for only a few minutes—are seemingly unique. Title 46 U.S.C.App. § 183b(a) permits a sea carrier to contractually limit the time period in which a suit for injuries may be filed by passengers, provided that time period is at least one year. *See* 46 U.S.C.App. § 183b(a). The only restriction to enforcement of such limitations is that the carrier "reasonably communicate" the existence and importance of the limitation to the passenger. *See Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 45–46 (2d Cir.1990) (per curiam). The "reasonably communicate" standard devolved from Judge Friendly's seminal opinion in *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11, 17 (2d Cir.1968), in which he found, based on his review of the case law, that a contractual limitation would not be enforceable unless the carrier satisfied its burden of showing that it "had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." Most circuits, including ours, have since construed *Silvestri* as requiring that "sea carriers reasonably communicate any limitations period to their passengers." *Spataro*, 894 F.2d at 46.

In applying this standard, several circuits have adopted a two-part test: (1) whether the physical characteristics of the ticket itself "reasonably communicate[d] to the passenger the existence therein of important terms and conditions" that affected the passenger's legal rights, and (2) whether "the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract" permitted the passenger "to become meaningfully informed of the contractual terms at stake." *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864–66 (1st Cir.1983); *see also Dillon v. Admiral Cruises, Inc.*, 960 F.2d 743, 744–45 (8th Cir.1992). As the court in *Shankles* noted, given the likelihood that a passenger will not read the fine print upon purchase or during a pleasure cruise, the surrounding circumstances examined in the second part of the test "may be of equal importance as the prominence of warnings and clarity of conditions [examined in the first part] in deciding whether a provision should be held to bind a particular passenger," since "the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket/contract in the event of an accident resulting in a loss or injury." 722 F.2d at 865.

The Second Circuit has never discussed, much less adopted, the two-part test, perhaps because the second part has never been at issue. *See, e.g., Effron*, 67 F.3d at 8 (noting that plaintiff purchased ticket one month before cruise); *Spataro*, 894 F.2d at 46 (omitting discussion of when plaintiff received ticket or whether plaintiff retained possession, but language of ticket indicated that plaintiff received tickets in advance of arrival for the cruise). In the

instant case, however, plaintiff conceded that there was no dispute with respect to the first part of the test because the physical characteristics of the passenger ticket reasonably communicated the existence and importance of the contractual terms of passage. Thus, plaintiff's success depends entirely on whether we adopt the second part of the test and apply it in her favor.

Several district courts in this circuit have employed the two-part test, reasoning that it is used widely among other circuits and is not inconsistent with our circuit's approach. *See, e.g., Ames v. Celebrity Cruises, Inc.,* Dkt. No. 97 Civ. 0065(LAP), 1998 WL 427694, at *4 & n. 7 (S.D.N.Y. July 29, 1998) (applying two-part test and noting its widespread use); *Boyles v. Cunard Line Ltd.,* Dkt. No. 93 Civ. 5472(CES), 1994 WL 449251, at *2 & n. 6 (S.D.N.Y. Jan.11, 1994) (applying two-part test on reasoning that, although not explicitly adopted by Second Circuit, test is not inconsistent with this circuit's decisions); *Lieb v. Royal Caribbean Cruise Line, Inc.,* 645 F.Supp. 232, 234 (S.D.N.Y. 1986). The district court below also applied the two-part test, finding that it could be "harmonized" with the test applied by the Second Circuit. We believe the two-part test to be useful in analyzing the reasonably communicated standard and to be a satisfactory refinement of Judge Friendly's holding in *Silvestri,* and therefore, take this opportunity to expressly adopt it.

■ Applying the test's second part to the facts of this case, we must decide whether a carrier gives reasonable notice of contractual limitations when it issues a ticket bearing the terms of the limitations to the passenger just minutes before she boards the ship and then collects the entire ticket at boarding, thereby leaving her with no written notice of the terms or even that such terms exist.

As the district court below noted, in the majority of cases in which a time limitation contained on a passenger ticket has been upheld, the court's decision rested in part on the fact that the passenger or the passenger's agent received the ticket several days in advance of the trip and was allowed to retain the ticket (or at least that portion of the ticket containing the contract terms and conditions) either permanently or for a substantial period of time after boarding the ship. *See, e.g., Dillon,* 960 F.2d at 744–45 (upholding limitation where plaintiff purchased ticket at least one week before trip and her attorney retained ticket after injury); *Marek v. Marpan Two, Inc.,* 817 F.2d 242, 243–44 (3d Cir.1987) (upholding limitation where plaintiff received ticket just before boarding and one page of ticket collected upon boarding, but analyzing only portions of ticket retained by the passenger to determine reasonable communicativeness); *Shankles,* 722 F.2d at 866 (upholding limitation in part because plaintiff had ticket before boarding and retained it after the fire that caused her losses).

■ In some cases it is unclear whether the passenger was allowed to retain the ticket, while in others the passenger specifically sought to avoid the terms because the ticket was collected upon boarding. In each of these cases, however, enforcement of the ticket's terms was upheld in part because the passenger had received the ticket several days in advance of boarding and thus had ample time to read it. *See, e.g., Effron,* 67 F.3d at 8 (upholding forum selection clause where plaintiff purchased ticket one month in advance); *Foster v. Cunard White Star,* 121 F.2d 12, 13 (2d Cir.1941) (per curiam) ("Plaintiff is charged with notice [of time limitation] ... since her brother ... [had ticket] for some seventeen days before the voyage."); *Colby v. Norwegian Cruise Lines, Inc.,* 921

F.Supp. 86, 88 (D.Conn.1996) (holding that even though ticket was surrendered upon boarding, plaintiff was deemed to have reasonable notice of forum selection clause because plaintiff had ticket "for a period of time"); *Murray v. Cunard S.S. Co.,* 235 N.Y. 162, 166, 139 N.E. 226 (1923) (Cardozo, J.) (holding that fact that ticket was collected upon boarding did not help plaintiff in fighting time limitation because he "held [the ticket] several days with ample time to read it"). Notably, in each of these cases, the amount of time the passenger had to examine the ticket was critical to the decision to uphold the contractual limitation.

No case cited by the parties or the district court involved the rare situation presented in this case: one in which the passenger's possession of the ticket is limited to two to three minutes as a result of the carrier's own practices. The district court, nevertheless, held that the clause here was enforceable because it took less than a minute to read and, therefore, Ward—or her husband acting as her agent—had adequate time to read it before boarding the ferry. The district court went on to state that, even if Ward had not read the ticket before boarding, she had ample opportunity to obtain a duplicate ticket after the accident and her attorney "presumably dropped the ball" by failing to do so.

In our view, the district court's reasoning is flawed because it confuses the significant question of whether CSF reasonably communicated to passengers that the ticket contained important terms and conditions, given the amount of time CSF allowed passengers to possess the tickets, with the less important question of whether it was possible to read the ticket in the amount of time provided. *See Silvestri,* 388 F.2d at 17.

We find that possession of the ticket for such a short period of time was insufficient to give Ward reasonable notice that the ticket contained important contractual limitations. Indeed, the fact that CSF collected the tickets so quickly after providing them to the passenger tended to negate the idea that the tickets were important contractual documents. *See Silvestri,* 388 F.2d at 17 (holding that for notice to be reasonable, it must "warn the passenger that the terms and conditions were important matters of contract affecting [the passenger's] legal rights"); *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11, 13 (5th Cir.1979) (holding that a ticket is not binding unless it is given to the passenger "within such a time as to give him an ample opportunity to examine its contents" and "it is shown that he knew or had reason to know of [the contract terms'] existence" (internal quotation marks omitted)).

As the district court in *Ames* stated, moreover, the second part of the test "focuses on the subjective circumstances attending a particular plaintiff's opportunity to review the ticket terms before embarkation. Such factors include 'the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice the passenger received outside of the ticket.'" *Ames,* 1998 WL 427694, at *5 (quoting *Boyles,* 1994 WL 449251, at *3) (internal citation omitted). In this case, the circumstances surrounding Ward's purchase and subsequent retention of the ticket are that her husband entered the terminal building and purchased the ticket two to three minutes prior to boarding, then proceeded across the parking lot to board the ferry with Ward. Ward fell on the gangway while boarding and had to be carried on board by her husband, who handed the tickets to

the ticket collector in the process. Under these circumstances, even if Ward or her husband might otherwise have had ample opportunity and incentive to inspect the tickets, both she and her husband would certainly have been distracted from studying the ticket's provisions. *See Shankles,* 722 F.2d at 864 (noting that test requires a "case-by-case determination," and that "[d]iffering circumstances may render the same ticket binding on one passenger ..., yet invalid as against another passenger").

The district court relied on several cases for the proposition that Ward had ample opportunity to obtain a duplicate ticket after the trip. We find those cases to be distinguishable because in each of them the passengers had received their original tickets well in advance of the trip, and thus the carrier had satisfied its burden of providing reasonable notice. In *Ames,* for example, the district court found that as a matter of law the carrier had given reasonable notice because plaintiffs' possession of the tickets for "two or three days [before the trip] provided plaintiffs with a reasonable amount of time to peruse and familiarize themselves with the time limitations affecting their right to sue." *Ames,* 1998 WL 427694, at *5; *see also id.* at *5 n. 10. Although the district court then went on to state that the plaintiffs "had a duty at [the] time [of injury] to consult their tickets or to contact [the Defendant] in order to learn of any limitations affecting their right to sue," *id.* at *5, we read this statement as implicitly holding that plaintiff's duty to contact the defendant did not arise until defendant had satisfied its obligation to give reasonable notice.

Similarly in *Murray,* also relied upon by the district court here, Judge Cardozo stated that where the ticket was collected upon boarding, plaintiff could have obtained a copy of his ticket after the accident. *Murray,* 235 N.Y. at 166, 139 N.E.

226. But, as with *Ames,* the court in *Murray* had already held that reasonable notice had been satisfied because the plaintiff "held [the ticket] several days with ample time to read it." *Id.*

Other cases in which a court stated that plaintiff could have contacted the carrier after the injury to learn if any limitations applied did not involve a situation where the carrier collected the ticket at boarding. In those cases, the plaintiff had either discarded or lost the ticket, or had not retained all pages of the ticket after boarding. For example, in *Kendall v. Am. Haw. Cruises,* 704 F.Supp. 1010, 1016–18 (D.Haw.1989), plaintiffs had received the ticket before boarding and retained it afterward. The time limitations, however, were contained on page eight of the ticket, which plaintiffs alleged was missing from their copy. *Id.* at 1017. The district court noted that while this fact "clearly is significant," reasonable notice had nevertheless been established because two pages that plaintiffs admittedly received and retained alerted them that time limitations existed and that they were located on page eight. *Id.* at 1016–17. Thus, plaintiff was held to be on notice to obtain another copy of that page. *Id.*

In light of the rationale employed in these other cases, we do not think that giving a passenger a ticket that is collected two to three minutes later sufficiently notifies the passenger that the ticket contains important contractual terms such that the passenger, or her lawyer, would be expected to obtain a duplicate ticket in the event of an injury. The district court's reasoning that the lawyer "presumably dropped the ball" improperly shifted the burden to Ward to learn if notice had been given, rather than determining whether CSF had given reasonable notice in the first place.

As a practical matter, moreover, denying enforcement of the contractual limita-

tion here does not place an unreasonable burden on CSF. No reason has been advanced why, for example, CSF could not give passengers a two-part ticket and then collect only the part that does not contain the contract terms.

Accordingly, we reverse the district court's grant of summary judgment for defendants and remand for further proceedings not inconsistent with this opinion.