Brinett **PALMER**, Plaintiff,

v.

**NORWEGIAN CRUISE LINE & NORWEGIAN SPIRIT, a cruise liner, Defendants.**

**No. 08–cv–4914 (ADS)(ARL).**

United States District Court, E.D. New York.

Oct. 2, 2010.

John Mulvehill, Esq., St. James, NY, for plaintiff.

Junge & Mele, LLP, by Peter A. Junge, Esq., of Counsel, New York, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of personal injuries allegedly sustained by the plaintiff, Brinett Palmer, as a result of an accident that occurred on December 21, 2006 while the plaintiff was a passenger on board the

Norwegian Spirit, an ocean cruise ship operated by the Norwegian Cruise Line ("Norwegian"). Both the plaintiff and the defendants now move for summary judgment. For the reasons set forth below, the Court grants the defendants' motion for summary judgment, dismisses the plaintiff's claims in their entirety, and deems all other pending motions moot.

## I. BACKGROUND

The following facts are drawn from the parties' submissions. In reviewing the defendants' motion for summary judgment, all inferences that the Court draws from these submissions are viewed in the light most favorable to the plaintiff.

In 2006, plaintiff Brinett Palmer worked as a "home health aide" for Home Instead Senior Care ("Home Instead"), a company that provided individual home health care to persons requiring assistance. In September 2006, a woman named Diane Laub contacted Home Instead to request an aide to care for her wheelchair-bound mother-in-law, Ruth Laub, on a family sea cruise in December. Home Instead recommended Palmer for the job, and later that month, Diane Laub met with both Palmer and a supervisor from Home Instead so that she could conduct a screening interview. After a successful interview, Diane Laub called Home Instead to approve Palmer, and sometime shortly thereafter in September or October 2006, Home Instead told Palmer that she had been given the assignment.

After securing Palmer's services for the cruise, Diane Laub provided Palmer's information to her travel agency, which in turn prepared a cruise ticket in Palmer's name. A sales representative for that travel agency then hand delivered four ticket booklets, including the ticket booklet for Palmer, to Diane Laub's home during the first week of December 2006. The ticket booklets each contained a boarding pass with the passenger's name printed on it, as well as a number of additional pages with information for the passenger.

After the initial interview with Diane Laub, Palmer had no contact with any member of the Laub family until the morning they boarded the cruise ship together. On that morning, December 21, 2006, Palmer traveled to the Laubs' home, where she met Diane Laub, Diane's husband Daniel Laub, and Ruth Laub, all of whom were going on the cruise. All four then traveled together to the cruise ship pier in Manhattan. When they arrived, Diane Laub handled the tickets for all members of the party, while Palmer wheeled Ruth Laub up the gangplank. As the group boarded the ship, a Norwegian representative removed the boarding pass from each ticket booklet, and returned the remaining pages of each booklet to Diane Laub. Palmer never saw or read her ticket or ticket booklet, either before or after boarding the ship. Nor did anyone tell Palmer that she needed a ticket to board the cruise ship.

After boarding the ship, Palmer accompanied Ruth Laub to her cabin, which the two were to share. That night, Palmer slept on a fold away bed in the cabin, and about 11:00 p.m., while Palmer was sleeping, the wooden slats that supported the bed's mattress gave way. Palmer and the mattress fell to the floor, and Palmer allegedly sustained injuries to her back, neck and foot. Palmer called Diane Laub to report the incident, and ship security came to her room that night to address the situation. The next day, Palmer went to the ship's Medical Center and received treatment for her injuries. For the remainder of the cruise, Palmer visited the medical center on board the ship daily, but she continued to assist Ruth Laub until the cruise ended on January 2, 2007.

Once back in New York, Palmer returned to her home. Diane Laub, who had

up until that point retained the booklet for Palmer's ticket, discarded it. Palmer has not worked since returning from the cruise.

Although Diane Laub discarded the remainder of Palmer's ticket booklet, Norwegian has submitted to the Court Palmer's original boarding pass, which had been removed from her ticket booklet. In addition, Norwegian has submitted a declaration from its Claims Manager, Jane Kilgour, attaching a copy of a blank ticket booklet that Kilgour asserts is identical to the ticket booklet that Norwegian issued to every passenger on the cruise. Although in her memorandum of law the plaintiff argues that this is insufficient proof of the appearance of Palmer's actual ticket booklet, the Court finds that, lacking any evidence to the contrary, the sample booklet submitted by Norwegian is materially identical to the actual booklet issued in Palmer's name. *See Ciliberto v. Carnival Cruise Lines, Inc.*, No. 85–cv–4017, 1986 WL 2560, at *3 (E.D.Pa. Feb. 25, 1986) (finding no reason to doubt a sample ticket submitted by the defendants when the original ticket in the case had been destroyed).

Palmer's ticket booklet was a rectangular document with twelve double sided pages, each measuring approximately 8–3/4 by 3–1/2 inches. The first two pages of the booklet include advertising and information concerning international travel. The third page, which is the only single sided page, is the passenger's boarding pass, which is torn out of the booklet upon entry to the vessel. The next page is a materially identical copy of the boarding pass that the passenger retains with the rest of the booklet. On the back of that page of the booklet is the first of four and half double-sided pages of detailed legal provisions concerning the terms of passage, written in small but legible print. The final four pages of the booklet contain departure and itinerary information, as well as additional advertisements.

The booklet contains a number of references to the four and a half pages of detailed legal information contained in the ticket booklet. Thus, on the front cover of the booklet a notice states in small, though legible, black lettering:

IMPORTANT NOTICE: The guest's attention is specifically directed to the terms and conditions of this contract set forth within. The terms and conditions affect important legal rights and the guest is advised to read them carefully.

(Kilgour Decl. at Ex. A.) On the back side of that cover, a message from Norwegian's President and CEO advises customers in large friendly type that "[t]his booklet contains ... important information to help make Freestyle Cruising the best vacation experience you can imagine. Please take a few moments to go over everything." (Id.)

Then, on both the passenger's actual boarding pass and the copy that the passenger retains, the text from the front cover of the booklet is repeated in larger type and in a blue box. Palmer's boarding pass thus appeared as shown below (though slightly larger in the original), with the relevant notice in the bottom right corner:

**NORWEGIAN** CRUISE LINE

7665 Corporate Center Drive
Miami, Florida 33126

**Passenger Ticket Contract**
Cruise Ticket
Do Not Separate Until Pier Check-In

NORWEGIAN SPIRIT    SAILING: Dec 21, 2006    RESERVATION: 13182765
YOUR CRUISE-MAIL ADDRESS: bpalmer9056@nclspirit.cruisemail.net
GROUP: 1415122
EMBARKATION/DEST: NYC/NYC

9056    FWD    FREESTYLE

ADULTS: 1    INS    TYPE    CLIENT ID
BRINETT PALMER    US    N    NP    206086328

IF YOU ARE A MEMBER OF OUR PAST GUEST
CLUB, LATITUDES, AND THIS TICKET INDICATES
YOU ARE A TYPE - " NP" , PLEASE CALL NCL AT
1-800-343-0098 BEFORE SAILING TO UPDATE YOUR
LATITUDES STATUS.

SABRE AGENCY, INC.
200 PARKWAY DRIVE DOUTH SUITE #301    SNYDER LISA    FARES AS AGREED
HAUPPAUGE, NY 117885121 US    631-864-8641

**IMPORTANT NOTICE**
The Passenger's attention is specifically directed to the terms and condi-
tions of this contract set forth within. These terms and conditions affect
important legal rights and the passenger is advised to read them carefully.

(Id. at Ex. B.) A similar notice appears again at the top of the first of the pages of legal terms. That warning is printed in still larger type, and reads:

IMPORTANT NOTICE: Guests are advised to carefully read the terms and conditions of the Guest Ticket Contract set forth below which affect your legal rights and are binding. Acceptance or use of this Contract shall constitute the agreement of Guest to these Terms and Conditions.

(Id. at Ex. A (emphasis in original).)

Finally, on the last page of the legal terms appears paragraph 10(a), which provides for a shortened, one year limitations period during which a passenger may sue Norwegian for injury sustained while on board the cruise ship. The paragraph states in pertinent part:

Suits for Injury or Death: The Guest agrees that ... no suit shall be maintainable [against Norwegian for injury] unless commenced within one (1) year from the day of the incident giving rise to such injury, illness or death; notwithstanding any provision of law of any state or country to the contrary.

(Id.)

On March 12, 2007, less than three months after the accident, and well before the shortened limitations period ended, an attorney named Nicholas Panzini submit-ted a letter to Norwegian, which read in pertinent part:

Re: Brinett Palmer
    Date of Accident: 12/21/06, State-room# 9056
Dear Mr. Vanosmael:
    Please be advised that I have been retained to represent the above-named in connection with a claim for personal injuries sustained as a result of your negligence....
    If I fail to hear from you or your insurance representative within ten (10) days from this date, I will have no recourse but to institute appropriate action on behalf of my client....
    NOTE: Please provide my office with a copy of the boarding pass/passenger ticket for this passenger, Brinett Palmer.
        Very truly yours,
        NICHOLAS PANZINI

(Panzini Decl., July 28, 2010, Ex. 1.)

Notwithstanding this letter, Panzini's representation of Palmer is shrouded in mystery. Panzini did not commence a lawsuit against Norwegian on Palmer's behalf, and while he admits that he sent the letter to Norwegian, he states that he "do[es] not have a file on this matter," (Panzini Decl., July 9, 2010 at 1), and that he "do[es] not believe that [he] received an answer [to the letter]" (Panzini Decl., July

28, 2010, ¶ 1). For her part, Palmer states that she met with Panzini concerning her injuries, but that they only discussed pursuing a worker's compensation claim. Norwegian does not reveal whether it responded to Panzini's letter.

On December 8, 2008, almost two years after the plaintiff's fall, the plaintiff filed the present action through her attorney John H. Mulvehill, Esq., asserting claims against the defendants for failing to satisfy their duty as a common carrier to protect her from injury. On February 18, 2008, the plaintiff amended her complaint to add a claim based on negligence.

The defendants now move to dismiss this action as having been filed in violation of the one-year limitations period provided for in the ticket contract. In opposition to this motion, the plaintiff asserts that (1) she is not party to any contract with Norwegian, and (2) if she were a party to the ticket contract with Norwegian, the shortened limitations period would not be enforceable. In addition, the plaintiff moves for summary judgment in her own right, claiming that Norwegian's negligence has been established as a matter of law. She seeks one million dollars in damages, including medical expenses and lost wages.

## II. DISCUSSION

### A. Standard on a Motion to Dismiss

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. As to the Defendants' Motion to Dismiss

The parties here agree that the plaintiff did not file the present suit within one year of her accident, and that, if enforced, the shortened limitations period provided for in Palmer's ticket booklet would bar this suit. Therefore, the issue before the Court is whether the one-year limitations provision should be enforced in this case.

The defendants urge that it should; the plaintiff disagrees.

### 1. As to the Existence of a Contract Between Palmer and Norwegian

■ Palmer's first objection to the enforcement of the shortened limitations period is that she had no binding contract with Norwegian. Palmer neither purchased nor handled nor did she see her own ticket, and she asserts that she did not give authority to anyone else to do so. Thus, Palmer argues, she had no "community of interest" (Pl.'s Opp. at 3) with the purchaser of her ticket, and no "privity of contract" with Norwegian (Id. at 11). As such, Palmer concludes, whether or not the terms found in her ticket booklet would be enforceable, the contract itself does not exist.

■ The Court need not dwell long on this issue. It is well-established that a ticket for passage on a cruise ship constitutes a maritime contract and is governed by United States maritime law. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Applying this law, numerous cases from both the Second Circuit and various district courts have held that a passenger's ticket may constitute a contract with a carrier even when the passenger neither purchases nor sees that ticket. *See Ward v. Cross Sound Ferry,* 273 F.3d 520, 524 (2d Cir.2001) (stating that a husband was his wife's agent for purpose of a ticket purchase); *Foster v. Cunard White Star,* 121 F.2d 12, 13 (2d Cir.1941) (enforcing provisions in a ticket purchased and continuously held by the plaintiff's brother); *Kientzler v. Sun Line Greece Special Shipping Co.,* 779 F.Supp. 342, 346 (S.D.N.Y.1991) (enforcing a ticket contract purchased by a passenger's employer and never presented to the passenger); *Ciliberto,* 1986 WL 2560 at *1; *DeCarlo v.*

*Italian Line,* 416 F.Supp. 1136 (S.D.N.Y. 1976).

■ Here, the plaintiff attempts to distinguish her case from these authorities by asserting that she never gave Diane Laub authority to purchase a ticket for her. However, no express authorization for the third-party purchaser is necessary to create a contract between the passenger and the carrier. *See, e.g., Kientzler,* 779 F.Supp. at 346 (finding an enforceable contract where plaintiff did not know who had arranged for her passage and never saw ticket); *Ciliberto,* 1986 WL 2560 at *1 (finding an enforceable contract where a traveling companion who had never met the plaintiff purchased plaintiff's ticket, and the plaintiff never saw her ticket). The plaintiff knew or should have known that she needed a ticket to board the cruise ship, and when she embarked pursuant to the ticket Diane Laub purchased for her, that ticket became a valid contract for passage between the plaintiff and Norwegian. Therefore, regardless of whether the limitations period provided for in the plaintiff's ticket booklet is enforceable, the Court is satisfied that the plaintiff had a contract for passage with the defendants.

■ The plaintiff makes an additional objection to the existence of a contract, asserting that the terms of the ticket contract do not apply to her because the contract is between Norwegian and "Guest," and as a health aide to Ruth Laub, she was not a "Guest" on board the ship. This argument is without merit, as the ticket explicitly defines the term "Guest" as "each person whose name appears on the face of this ticket and/or who uses the ticket for passage on the voyage described in the ticket." (Decl. of Jane Kilgour, Ex. A.) Her name appears on the face of her ticket, and the plaintiff was a "Guest" pursuant to the terms of the contract.

### 2. As to the Enforceability of the Terms of the Ticket Contract

In this regard, Palmer asserts that, even if there was a contract between her and Norwegian, the shortened limitations period provided for in the ticket booklet is not enforceable. Norwegian disagrees, and contends that the limitations period is enforceable.

The Supreme Court has held that a clause in a form passenger ticket contract is enforceable when (1) the terms withstand judicial scrutiny as to reasonableness and fundamental fairness and (2) the clause is "reasonably communicated" to the passenger by the carrier. *Shute*, 499 U.S. at 590, 111 S.Ct. 1522; *Caputo v. Holland America Line, Inc.*, No. 08–cv–4584 (CPS)(SMG), 2009 WL 2258326, at *3 (E.D.N.Y. July 29, 2009) (citing *Shute*, 499 U.S. at 590, 111 S.Ct. 1522). The Second Circuit has broken down the second prong of this test into two subdivisions, so that the Court must also examine (a) whether the physical characteristics of the ticket "reasonably communicate to the passenger the existence of important terms and conditions that affect the passenger's legal rights", and (b) whether the "circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract permitted the passenger to become meaningfully informed of the contractual terms at stake." *Ward*, 273 F.3d at 523 (internal quotations omitted).

### a. Prong One: As to the Reasonableness and Fundamental Fairness of the Time Limitation

■ The Court first considers the first prong of the Supreme Court's test for enforceability of a limitations period, which requires that the period be reasonable and fundamentally fair. *Shute*, 499 U.S. at 595, 111 S.Ct. 1522.

Pursuant to 46 U.S.C. § 30508, previously codified as 46 U.S.C. § 183(b)(a), a sea carrier may contractually limit the period in which passengers can file suit for injury, but must allow a claimant at least one year from the date of injury to file a civil action for personal injury or death. *See* 46 U.S.C. § 30508; *see also, Noboa v. MSC Crociere S.p.A.*, No. 08–cv–2896 (PKL), 2009 WL 1227451, at *3 (S.D.N.Y. May 5, 2009). Accordingly, the Second Circuit has upheld time limitations contained in passenger ticket contracts "provided that the time period is at least one year and the carrier reasonably communicates the existence and importance of the limitation to the passenger." *Id.* at *3.

Because the passenger ticket contract provides for the statutorily required one year limitations period, this Court finds that the terms of the time limitation provision are fundamentally fair and reasonable within the applicable rules.

### b. Prong Two: As to Reasonable Communication of the Time Limitation

■ Whether a sea carrier has reasonably communicated contractual limitations to a passenger is a question of law for the Court to decide, and is thus appropriate to consider on summary judgment. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir.1995); *Lischinskaya*, 2006 WL 4050814, at *3 (citation omitted). In addressing a similar issue in the seminal case *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11, 17 (2d Cir.1968), Judge Friendly held that a contract provision is enforceable when "the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." Then, in *Ward*, 273 F.3d at 524, the Second Circuit explicitly "refin[ed]" Judge Friendly's standard to employ a two part test focusing on (a) the physical characteristics of the ticket, and (b) the circumstances sur-

rounding the plaintiff's purchase and retention of the ticket.

*Sub-prong a: The physical characteristics of the ticket*

■ Here, the plaintiff does not deny that the physical appearance of her ticket booklet reasonably communicated to her the existence of the limitations period. Thus, the Court addresses this issue only in brief.

District courts in this circuit have found the physical characteristics of a ticket to reasonably communicate a contractual limitation where the ticket contains clear and conspicuous notices that passengers were bound by important terms and conditions contained in the ticket booklet. *Noboa v. MSC Crociere S.p.A.*, No. 08–cv–2896 (PKL), 2009 WL 1227451, at *4 (S.D.N.Y. May 5, 2009). Here, Norwegian's ticket booklet contained several such notices to passengers. Moreover, the Second Circuit and numerous district courts have found similar or identical warnings to be sufficient. *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir.1995) (finding sufficient notice even where the clause in question was in fine print); *Vega v. Norwegian Cruise Lines*, No. 06–cv–3887 (NGG)(SMG), 2007 WL 1791624, at *1, *3 (E.D.N.Y. June 20, 2007) (finding that warnings that were identically worded and similar in appearance to those in the present case were sufficient); *Valenti v. Norwegian Cruise Line*, 04–cv–8895 (RWS), 2005 WL 927167, at *1, *4 (S.D.N.Y. April 21, 2005) (same); *Lurie*, 305 F.Supp.2d at 360 ("[T]he prominent warnings on the ... passenger ticket contract drawing the passenger's attention to the importance of the contract terms ... clearly meet the first part of [the two-part] test."); *Lischinskaya v. Carnival Corp.*, No. 12356/05, 14 Misc.3d 1230(A), 2006 WL 4050814, at *4 (N.Y.Sup.Ct. Oct. 4, 2006) (finding that several bold, capitalized warnings were sufficient to direct passengers' attention to the various clauses of the contract).

In view of these clear precedents, this Court finds that the physical characteristics of Palmer's ticket booklet reasonably communicated the existence of the shortened limitations period.

*Sub-prong b: The circumstances surrounding the purchase and retention of the ticket*

■ Having found the physical characteristics of the plaintiff's ticket were sufficient to reasonably communicate the relevant contractual terms, the only remaining question for the Court to resolve is whether the circumstances surrounding the purchase and retention of the plaintiff's ticket gave her sufficient opportunity to become aware of the ticket's provisions.

Both the standard for this inquiry set forth in *Silvestri* and the Second Circuit's refinement of this standard in *Ward* generally focus on the acts of the sea carrier in making the passenger aware of the relevant contractual provisions. *Silvestri*, 388 F.2d at 17 (focusing on whether "the steamship line had done all it reasonably could" to inform the passenger of the relevant provisions); *Ward*, 273 F.3d at 523 (focusing on whether circumstances "permitted" the passenger to learn the relevant contract terms). Therefore, in applying this test, the Second Circuit does not require that a passenger personally possess, read, see, or purchase a ship ticket for its terms to be enforceable, as long as the ticket was generally available to the passenger for a reasonable period of time both before and after embarkation. *See Ward*, 273 F.3d at 524 (holding that plain-

tiff's husband was her agent for ticket purchase, but that the ticket's provisions were not enforceable because husband had purchased the ticket minutes before boarding, and surrendered it upon entering the ship); *Foster*, 121 F.2d at 13 (enforcing a ticket contract purchased and continuously held by the plaintiff's brother); *Kientzler*, 779 F.Supp. at 346 (enforcing a ticket contract purchased by a passenger's employer and never presented to the passenger); *Ciliberto*, No. 85–cv–4017, 1986 WL 2560, at *1; *DeCarlo v. Italian Line*, 416 F.Supp. at 1136.

Here, unlike in *Ward*, there is no issue as to whether Diane Laub held the plaintiff's ticket for a sufficient period of time to satisfy the notice requirements. Laub received Palmer's ticket three weeks before the cruise, and was allowed to keep Palmer's ticket booklet indefinitely. *See, Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F.Supp.2d 352, 360 (S.D.N.Y.2004) (describing two weeks as reasonable and "well in advance" of the trip). Rather, the issue here is whether, based on Diane Laub's relationship with Palmer, Diane Laub's possession of Palmer's ticket was sufficient to "permit[ ] [Palmer] to become meaningfully informed of the contractual terms at stake." *Ward*, 273 F.3d at 524.

As noted above, the Second Circuit has held that the provisions of a ticket are enforceable against a passenger whose family member purchases and holds the plaintiff's ticket. However, the Second Circuit has not directly addressed whether the same result ensues when a less intimate companion of the passenger purchases and possesses the relevant ticket. Nevertheless, several district courts have addressed this situation, and in each case those courts found that the relevant ticket provisions were enforceable.

Thus, in *Ciliberto*, 1986 WL 2560 at *1, the plaintiff was traveling with her sister, her cousin, and her cousin's co-worker, a woman named Valerie Brown. Although a stranger to the plaintiff, Brown made travel arrangements for everyone in the group. Then, Brown or another member of the group—not the plaintiff—held the group's tickets before and after embarkation. The court nevertheless enforced a shortened limitations period provided for in the plaintiff's ticket, stating that "[i]t is painfully obvious that the plaintiff did not receive her ticket because she chose to have a 'traveling companion' make the arrangements and obtain her ticket for her ... It is immaterial that plaintiff did not personally know Ms. Brown prior to embarking on the cruise for she could have easily inquired as to who was making the arrangements and who had the tickets." *Id.* at *3; *see also DeCarlo*, 416 F.Supp. at 1137 (S.D.N.Y.1976) (enforcing ticket contract against a passenger whose "personal friend" held her ticket at all times).

Even more closely on point is *Kientzler*, 779 F.Supp. at 343, a case in which the plaintiff's employer arranged for her to travel aboard a cruise ship with certain of her co-workers to promote the company's products. *Id.* The plaintiff in *Kientzler* never saw or handled her ticket, but was nevertheless held bound by its terms. *Id.* at 346. The court stated: "While Plaintiff claims no knowledge of who had her ticket contract, the cruise was arranged as part of her employment, and clearly someone at [her employer] handled the arrangements for her. Plaintiff's limited knowledge of the circumstances surrounding her trip indicate[s] that she left the details to someone else at [her employer]. Thus, even if another person acting as Plaintiff's agent handled her ticket exclusively, Plaintiff is still charged with knowledge of its contents." *Id.*

The plaintiff seeks to distinguish the first of these cases, *Ciliberto,* by claiming that Diane Laub was not the type of friendly "traveling companion" who could impute knowledge of travel arrangements to her. The plaintiff argues that the term "traveling companion" as used in that case implies, if not friendship, then at least an agreement that Diane Laub would purchase and hold her ticket. The plaintiff insists that she had no such agreement with anyone.

The Court does not find this to be a valid distinction. The plaintiff in *Ciliberto,* like the plaintiff in this case, knew that she was traveling by cruise ship, but never inquired as to who was booking her ticket, and never expressly agreed that someone else would hold her ticket. To be sure, the plaintiff in *Ciliberto* was traveling for pleasure and the plaintiff in this case was traveling for work. However, whether she was working or not, a reasonable person would know that passage on a cruise line requires a ticket. A single inquiry to her employer or the Laubs would have revealed who had made arrangements for her passage. However, as in *Ciliberto,* the plaintiff here chose not to make this inquiry.

Similarly, the plaintiff attempts to distinguish *Kientzler* by pointing out that, unlike that case, her employer here—Home Instead—did not make the relevant travel arrangements. However, the fact that Palmer's ticket was purchased by Diane Laub rather than Home Instead does not differentiate this case from the thrust of the *Kientzler* court's holding. The *Kientzler* court essentially held that a passenger who leaves work travel arrangements to someone else is charged with knowledge of the relevant contract provisions, as long as the plaintiff could have readily determined who had made the arrangements and what the relevant contract provisions were. In this case, Palmer could have easily inquired as to who had made her travel arrangements and asked to see her ticket booklet. She did not do so. Under these circumstances, it is difficult to see how Norwegian failed to do its part to provide the plaintiff with an opportunity to learn the rules that applied to her passage.

The Court notes that, in her memorandum of law, the plaintiff additionally contends that she was "not permitted" to see her tickets at any time. (Pl.'s Opp. at 3, 16.) However, the plaintiff offers no evidence—not even her own testimony—in support of this assertion. In addition, Diane Laub testified that the plaintiff never asked to see her ticket booklet. (Diane Laub Decl., June 18, 2009, ¶ 9.) Thus, the Court does not consider this objection to be relevant to the present inquiry.

The plaintiff also complains that, knowing she was injured on board, Norwegian should have contacted her after the cruise to inform her of the limitations period that applied to a law suit against it. However, the plaintiff offers no case law that suggests that a cruise line has any obligation to do this. Therefore, this argument is similarly of no avail.

Despite this compelling authority, the Court is reticent to enforce against a consumer an un-bargained for contract term that was printed in small type, that was written in technical legal language, and that will prematurely end her lawsuit. As the First Circuit wryly noted, a passenger is unlikely to "read all of the fine print on the ticket … as pleasure reading in the berth the first night at sea." *Lousararian v. Royal Caribbean Corp.,* 951 F.2d 7, 12 (1st Cir.1991).

Nevertheless, while not part of the legal scenario, the Court's apprehension in this regard is somewhat assuaged by the fact that the plaintiff here consulted a lawyer concerning a law suit against Norwegian well before the one-year limitations period expired. While the plaintiff denies that she spoke to an attorney about suing Norwegian during the first year after her accident, the letter that attorney Nicholas Panzini sent to Norwegian ten weeks after the incident states plainly that he represented Palmer in connection with a potential suit against Norwegian for the injury she sustained on December 21, 2006 in Stateroom # 9056. The letter further states that if there is no response, an "appropriate action" will be instituted. The Court can draw no other reasonable conclusion from this unchallenged letter except that Palmer discussed with Panzini a lawsuit against Norwegian. It is not clear whether Norwegian responded to Panzini's letter, or whether Panzini took any further action on Palmer's behalf. Nevertheless, the fact that Palmer timely contacted a lawyer—who, while he never saw Palmer's ticket, could have determined whether any time limitations applied to her potential lawsuit—enhances the presumption that the terms of the plaintiff's contract of adhesion will be enforced. *See Vavoules v. Kloster Cruise Ltd.*, 822 F.Supp. 979, 981 (E.D.N.Y.1993) (Weinstein, J.) (holding that, where a cruise ship passenger consulted an attorney within the limitations period provided for in cruise ship ticket, the presumption that the limitations period would be enforced was heightened, and citing *Angello v. Queen Elizabeth 2*, 1987 A.M.C. 1150, 1154 n. 5, 1986 WL 15539 (D.N.J.1986); *DeNicola v. Cunard Line, Ltd.*, 642 F.2d 5, 11 (1st Cir.1981)).

Accordingly, in light of the clear Second Circuit authority on this issue, and finding the relevant district court authority persuasive and on point, the Court grants the defendants' motion for summary judgment dismissing the complaint based on the shortened limitations period provided for in the plaintiff's ticket booklet. All other pending motions in this case are therefore deemed moot.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment is granted and all of the plaintiff's claims and the complaint are dismissed, and it is further

**ORDERED** that all other pending motions are deemed moot; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**