**Jane DOE, Plaintiff,**

v.

**CARNIVAL CORPORATION, Defendant.**

**Case No. 12–22241–CIV.**

United States District Court, S.D. Florida.

Signed Aug. 20, 2012.

---

Joseph J. Rinaldi, Jr., Brill Rinaldi Garcia, Coral Gables, FL, Juan Manuel Garcia, Jr., Brill Rinaldi Garcia, Miami, FL, David Wayne Brill, The Law Firm Brill Rinaldi Garcia, Weston, FL, for Plaintiff.

Curtis Jay Mase, Richard David Lara, Lauren E. Defabio, Mase, Lara, Eversole PA, Miami, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Carnival Corporation's ("Carnival['s]") Motion to Dismiss Plaintiff's Complaint ("Motion") [ECF No. 9], filed July 17, 2012. Plaintiff, Jane Doe, "a minor, by and through her mother, natural guardian and best friend, Susan Doe," filed a Complaint [ECF No. 1] sounding in negligence against Carnival on June 14, 2012. (Compl. 1). Carnival now seeks to dismiss the Complaint in its entirety for being untimely. (*See* Mot.). Plaintiff filed a Response to Defendant's Motion ... ("Response") [ECF No. 10] on July 20, 2012, and Carnival filed a Reply ... ("Reply") [ECF No. 17] on August 6, 2012. The Court has carefully reviewed the Motion, the parties' submissions, the record and applicable law.

## I. BACKGROUND [1]

At the age of nine, Plaintiff took a cruise aboard Carnival's ship from July 18 to July 23, 2009. (*See* Compl. ¶¶ 4, 26). Plaintiff was accompanied on this cruise by several family members. (*See id.* ¶ 27). During the cruise, and at a Carnival employee's encouragement, Plaintiff's father signed her into a shipboard children's program ("Camp Carnival"). (*See id.* ¶¶ 28–29). Plaintiff's father told Camp Carnival personnel that Plaintiff was to stay with them until he returned for her. (*See id.* ¶ 29).

---

1. The factual background is taken from the allegations in the Complaint, which are accepted as true for the purposes of the Motion.

However, when Plaintiff asked a Camp Carnival staff member if she could leave to attend a teen party with her cousin and friends, the staff member permitted her to go. (*See id.*). After leaving Camp Carnival, Plaintiff was physically and sexually assaulted. (*See id.* $ 31). Plaintiff alleges negligence on Carnival's part in the advertising and implementation (or lack thereof) of safety precautions, the marketing of Camp Carnival, and other related actions. (*See generally id.*).

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 129 S.Ct. at 1949).

## III.  ANALYSIS

Carnival seeks to dismiss the Complaint for untimeliness. According to Carnival, Plaintiff signed a ticket contract with Carnival containing limitations on any lawsuit for any "injury, event, illness or death." (Mot. 2 (quoting Ticket Contract, Mot. Ex. B ¶ 12(a) [ECF No. 9–2] )). The Ticket Contract provides:

> Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

(Ticket Contract ¶ 12(a)). According to Carnival, Plaintiff's grandmother electronically accepted the terms of the Ticket Contract on Plaintiff's behalf on June 1, 2009, over a month before the cruise. (*See* Mot. 3).

Plaintiff does not dispute the Ticket Contract terms are valid and apply to her claim. In fact, the parties agree both that the Ticket Contract applies, and that 46 U.S.C. section 30508 governs applicability of limitations periods in such contracts to minors. The sole point of dispute between the parties is the date the limitations period in the Ticket Contract began to run, reading that Contract in conjunction with section 30508.

Section 30508 provides:

> If a claimant is a minor or mental incompetent, or if a claim is for wrongful death, any period provided by a contract

for giving notice of the claim is tolled until the earlier of—(1) the date a legal representative is appointed for the minor, incompetent, or decedent's estate; or (2) 3 years after the injury or death. 46 U.S.C. § 30508(d). There is no dispute the Complaint was filed within three years of the alleged injury. Nevertheless, at issue between the parties is "the date a legal representative [was] appointed for" the minor Plaintiff, at which time the statute of limitations would begin to run. *Id.*

Carnival suggests two possible times at which a legal representative was effectively appointed. According to Carnival, the first occurred when Plaintiff's mother learned of the incident in approximately April 2011. (*See* Mot. 8–9). The second possibility Carnival proposes is the date Plaintiff's mother retained an attorney, and that attorney sent a written notice of claim to Carnival on June 13, 2011. (*See id.* 9). Plaintiff, however, contends that the appointment of a legal representative requires some sort of official imprimatur, and asserts that the statute of limitations period began when Plaintiff's mother was officially appointed her guardian on July 19, 2012 by a state court. (*See* Resp. 9).

If either of Carnival's suggested theories is correct, *and if Carnival's facts may be taken as true,* Plaintiff's claim might not be timely brought. For purposes of the present Motion, however, the Court may not assume Carnival's facts to be true but must rely on the Plaintiff's facts as set forth in the pleading. Plaintiff includes no such information on when the mother learned of the incident or when an attorney was retained (or notice sent to Carnival). The Court must evaluate whether Plaintiff's claim is timely based solely on the allegations of the Complaint.

■ If Plaintiff's theory is correct that the statute of limitations began only when her mother was officially appointed her

guardian, the claim is timely. The remaining question for the Court at this stage of the proceedings is the date Plaintiff's mother should be deemed "appointed" as her legal representative for purposes of section 30508. If Plaintiff's mother was effectively appointed before the Complaint was filed, or before her official appointment by the state court, Plaintiff's claim might not be timely. The Court will first address whether Plaintiff's mother could have been deemed effectively appointed earlier than her court appointment as argued by Carnival, and if necessary separately address how much earlier she could be deemed appointed.

The dispute between the parties on this point concerns the fit between section 30508's language on the appointment of a legal representative and the law generally applicable to the appointment of a guardian ad litem. "It is well established that the appointment of a guardian ad litem is a procedural question controlled by Rule 17(c) of the Federal Rules of Civil Procedure." *Burke v. Smith,* 252 F.3d 1260, 1264 (11th Cir.2001) (internal quotation marks and citation omitted). Rule 17(c) provides:

> (1) *With a Representative.* The following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; ...
>
> (2) Without a Representative. A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

FED.R.CIV.P. 17(c). Thus, the applicable federal rule explicitly envisions a court "appoint[ment]" of a guardian ad litem in

Federal Rule 17(c)(2), but does not specify in Rule 17(c)(1) whether or when a "general guardian" must be appointed as representative, by the court or otherwise. It is out of this supposed ambiguity that Carnival fashions its argument that a general guardian such as a parent may be effectively deemed "appointed" under section 30508 without court intervention, prior to that parent's appearance in litigation. This position, however, is unfounded.

The case law with respect to next friends and guardians ad litem makes clear that to "appoint" a legal representative for a minor requires some judicial intervention. Generally speaking, appointment of a next friend or guardian ad litem under Rule 17(c) requires deliberate action by the court. *See Scannavino v. Fla. Dept. of Corr.*, 242 F.R.D. 662, 667 (M.D.Fla.2007) (making determination to appoint guardian ad litem upon "[a]n exhaustive review of the record," including evidence adduced at hearing). In *Gonzalez ex rel. Gonzalez v. Reno*, 86 F.Supp.2d 1167 (S.D.Fla.2000), the court stated that the plaintiff's uncle had "the burden to establish the propriety of proceeding as Plaintiff's next friend in this action." *Id.* at 1184 (citing *Ford v. Haley*, 195 F.3d 603, 624 (11th Cir.1999)). "The ability to function as a next friend is not 'granted automatically to whomever seeks to pursue an action on behalf of another.'" *Id.* (quoting *Lonchar v. Zant*, 978 F.2d 637, 640 (11th Cir.1992)) (citation omitted). The court explained that a next friend "must satisfy specific criteria" enunciated in Supreme Court and other federal court precedent. *Id.* at 1184–85 (citations omitted).

This does not mean a legal representative need always be appointed for a minor. "Rule 17(c) does not make the appointment of a guardian ad litem mandatory. If the court feels that the [person's] interests are otherwise adequately repre-

sented and protected, a guardian ad litem need not be appointed." *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958) (per curiam). In *Croce v. Bromley Corp.*, 623 F.2d 1084 (5th Cir.1980), the court held "there was no need for the [district] court to appoint a guardian ad litem" because the infant was already "'otherwise represented'; the child's legal guardian, his mother, brought this action on his behalf." *Id.* at 1093. *See also Burke*, 252 F.3d at 1264 ("In the present case, [plaintiff] was 'otherwise represented' by her mother who brought this action on her behalf. Thus, Rule 17(c) did not require the court to appoint a guardian ad litem."); *Gonzalez–Jimenez de Ruiz v. United States*, 231 F.Supp.2d 1187, 1197 (M.D.Fla.2002) (footnote call number and citations omitted) ("Both federal courts and Florida state courts have determined that the failure to appoint a 'next friend' or guardian ad litem does not necessitate dismissal of a lawsuit.").

This distinction emphasizes that "appointment" connotes a court-sanctioned process, whereas representation itself may be instigated by merely filing papers on the minor's behalf. There is a certain fluidity in the relationship between the provisions of Rule 17(c)(1) and Rule 17(c)(2), in the sense that one who qualifies as a "general guardian" may also be appointed as a "next friend" under Rule 17(c)(2). *See Gonzalez ex rel. Gonzalez*, 86 F.Supp.2d at 1185 ("Typically, the next friend who sues on behalf of a minor is that minor's parent."). Conversely, although a minor is represented *a priori* by a general guardian, the court may in its discretion appoint a non-parent next friend as better serving the child's interest. *Id.* (citing *Bank of the United States v. Ritchie*, 33 U.S. 128, 144, 8 Pet. 128, 8 L.Ed. 890 (1834); *Developmental Disabilities*

*Advocacy Ctr., Inc. v. Melton,* 689 F.2d 281, 285 (1st Cir.1982)).

However, the consistent principle drawn by the courts is that appointment within the meaning of Federal Rule 17(c) is not automatic and requires judicial involvement.[2] If appointment is given the same meaning under section 30508, Plaintiff's mother was "appointed" no earlier than July 19, 2012 by a state court, as Plaintiff states in her Response and Carnival does not refute. (*See* Resp. 9). To prevail, Carnival would have to demonstrate that the word "appointment" is conferred a different, more expansive meaning under section 30508 than in the Federal Rules. Carnival, however, makes no such showing, and the Court finds no basis for this in the law. The parties both direct the Court to several authorities more directly related to the cruise ship passenger ticket contract context and section 30508 or its previous iteration, 46 U.S.C. § 183(b)(a), *see Palmer v. Norwegian Cruise Line & Norwegian Spirit,* 741 F.Supp.2d 405, 412 (E.D.N.Y. 2010). These authorities do not tend to support Carnival's position.

Plaintiff points to *Harts v. Carnival Corp.,* No. 05–20577–CIV, 2005 WL 2455817 (S.D.Fla. June 10, 2005), and *Boehnen v. Carnival Cruise Lines, Inc.,* 778 So.2d 1084 (Fla. 3d DCA 2001) in support. In *Boehnen,* the court held that the shortened contractual limitation period "shall not be applicable to mentally incompetent persons when no legal guardian has been appointed." 778 So.2d at 1085. In that case, the mentally handicapped plaintiff was sexually assaulted aboard a Carnival cruise and approximately nine months later gave birth to a boy. *See id.* The

plaintiff was accompanied by her mother during the cruise. *See id.* Carnival argued that the plaintiff had lost the statutory "safe haven" because no legal guardian was appointed within three years of the date of injury. *Id.* The court disagreed, noting that " '[t]he provision for appointing a guardian within 3 years is not an end in itself, but an outside limit on how long the time may be extended by reason of the [incompetency] of the claimant.' " *Id.* (quoting *Powell v. Compagnie Generale Transatlantique, Ltd.,* 47 Misc.2d 670, 263 N.Y.S.2d 17 (N.Y.App.Term.1965)). The court further concluded that "the statute allows a mentally incompetent person without a legal guardian to bring an action up to three years from the date of injury." *Id.*

The fact that the plaintiff in *Boehnen* gave birth nine months after her assault creates a strong inference that her mother, later appointed guardian, learned of the incident at least at the time of birth if not before. However, the court did not consider whether the mother's knowledge of the assault created an effective appointment, instead taking the common-sense approach that the mother's actual *appointment* by a court started the limitations period. Likewise, there was no analysis of when the mother retained counsel on her daughter's behalf.

In *Harts,* the Court examined an identical limitations provision in a passenger ticket contract between Carnival and a plaintiff who was a minor at the time of her alleged sexual assault, but over eighteen by the time she commenced her action. *See* 2005 WL 2455817, at * 1. The

**2.** In *Gibbs ex rel. Gibbs v. Carnival Cruise Lines,* 314 F.3d 125 (3d Cir.2002), the court found that an appointment officially occurred upon a guardian ad litem's filing of papers in litigation. *See id.* at 135. However, the court was applying New Jersey law and concluded

that "New Jersey vests sole authority of appointment in negligence actions in courts, not private actors, in order to ensure that the child's interests are protected." *Id.* (citation omitted).

**1260**

undersigned, however, did not examine the meaning of the word "appointed" in section 30508 and certainly made no finding that would support either of Carnival's theories. *Harts* was affirmed in *Doe v. Carnival Corp.*, 167 Fed.Appx. 126 (11th Cir. 2006), in which the court clarified that the statute "does not abrogate the contractually shortened statute of limitations, . . . but rather simply tolls its operation *until the appointment of the guardian*," *id.* at 128 (emphasis added), without further defining what appointment entails as it was not relevant to that case.

The Court concludes that Carnival has presented no authority for finding that a parent is effectively deemed "appointed" within the meaning of section 30508 either when the parent learns of the event giving rise to the minor child's claim, or when the parent retains counsel on the minor's behalf. The Court finds no reason to contravene the obvious maxim that a parent is appointed guardian when a court appoints the parent as guardian. Failing such appointment, the parent may still act as legal representative, in which case section 30508(d)(2) grants three years after the injury in which to file the claim. All parties agree Plaintiff filed her claim within three years of the injury. All parties also agree that if the limitations period was tolled until Plaintiff's mother's appointment on July 19, 2012, the claim is timely. Accordingly, Carnival fails to persuade that Plaintiff's claim is untimely brought.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 9] is **DENIED.**