**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CULINARY VENTURES, LTD, d/b/a BITEMOJO, | No. 83486-0-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| MICROSOFT CORPORATION, | |
| Respondent. | |

CHUNG, J. — Culinary Ventures d/b/a Bitemojo, the creator of a smartphone application for self-guided food tours, entered into a subscription agreement with Microsoft Ireland for its Azure online cloud-based data storage services. The agreement included a forum selection clause specifying that if it brought an action to enforce the agreement, Bitemojo would bring such an action in Ireland. At Bitemojo's request, Azure twice suspended Bitemojo's account, as well as the required payments. Thereafter, Azure deleted Bitemojo's data. Subsequently, Bitemojo sued Microsoft Corporation in King County for promissory estoppel, breach of contract, conversion, and violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court granted Microsoft Corporation's CR 12(b)(3) motion to dismiss for improper venue based on the agreement's forum selection clause.

No. 83486-0-I

We determine that the parties intended that the forum selection clause apply to claims such as Bitemojo's that concern the subject matter of the agreement. Further, Bitemojo has not shown that enforcement of the agreement's forum selection clause to foreclose the CPA claim is unreasonable. Accordingly, we affirm the trial court's dismissal of Bitemojo's claims.

FACTS

Bitemojo is the trade name for a smartphone application developed by Culinary Ventures, an Israeli company. The Bitemojo application provided travelers with food tours that included content and access to dishes offered by small, local restaurants. Within three years of its launch, Bitemojo offered tours in 12 cities worldwide. It had raised millions of dollars in investment and had built a database that included information about each of its users.

Bitemojo chose Microsoft's Azure services to host its data, including user data, Bitemojo's products, visual and textual content, and biteCoins, its virtual currency. Microsoft's Irish subsidiary, Microsoft Ireland Operations Limited, offers the Azure services. The online services agreement between Bitemojo and Microsoft Ireland contains this forum selection clause:

> This agreement is governed by the laws of Ireland. If we bring an action to enforce this agreement, we will bring it in the jurisdiction where you have your headquarters. If you bring an action to enforce this agreement, you will bring it in Ireland. This choice of jurisdiction does not prevent either party from seeking injunctive relief in any appropriate jurisdiction with respect to violation of intellectual property rights.

Because of COVID-19, in March 2020, Bitemojo decided to shutter the company until the tourism industry improved. Bitemojo co-founder

2

No. 83486-0-I

Michael Weiss asked Azure if it would agree to suspend charges for its subscription services. On March 15, 2020, an Azure subscription support engineer told him the account would not incur additional charges. A few days later, another Azure subscription support engineer confirmed that Bitemojo's subscription was suspended and that "the system will delete [the account], after 90 days along with its data, if you do not want to reactivate it."

Weiss emailed Azure again on June 5, 2020, asking for "another extension in keeping our server shut down and our data secured." Azure responded on June 9 that it would suspend Bitemojo's subscription and "delay [its] payment," and that "there is no issue keeping your data safe[,] just make sure to contact [an] engineer within 3 months to postpone the data deletion."

At the end of the second suspension period, Weiss emailed Azure on Saturday, September 5, 2020, but received no response. Instead, on September 9,[1] Bitemojo received an email stating that its "data and services were deleted on September 9, 2020, because you cancelled your subscription 90 days ago." Weiss immediately opened a service case and over the next two weeks corresponded with various Microsoft[2] employees who escalated the request and sought responses from various internal

---

[1] Monday, September 7, 2020, was Labor Day, a holiday in the U.S.
[2] Bitemojo sued Microsoft Corporation, which contends it is not the proper party because its subsidiary Microsoft Ireland was party to the contract with Bitemojo for Azure services. As we do not address that issue, we refer in this opinion to both Microsoft Corporation and Microsoft Ireland as Microsoft unless a distinction between the two is necessary for clarity.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83486-0-I

teams. On September 23, 2020, Microsoft wrote to Weiss that it had exhausted all available resources and could not recover the data.

In August 2021, Bitemojo filed suit against Microsoft Corporation in King County, Washington, raising several claims. First, Bitemojo claims promissory estoppel, alleging that Azure subscription support engineers promised to keep Bitemojo's data safe as long as it contacted Azure within three months of suspending the subscription. Bitemojo contends that in reliance on that promise, it refrained from moving its data to another server and contacted Azure within three months to request an extension.

Bitemojo further alleges the Azure subscription support engineer created a binding contract when he promised Bitemojo's data would be kept safe if Bitemojo provided proper notification within ninety days. Thus, Bitemojo claims, Microsoft breached this agreement when, despite Bitemojo's proper notification, it deleted Bitemojo's data. Bitemojo also alleges Microsoft's deletion of its data constituted conversion.

Finally, Bitemojo alleges Microsoft violated the CPA because it assured Bitemojo it would not delete its data if Bitemojo followed up within 90 days, yet it then treated Bitemojo's subscription as cancelled. Bitemojo claims that Microsoft failed to implement policies or procedures for retaining data in an archived format so it could be recovered if improperly deleted.

Microsoft moved to dismiss for improper venue under CR 12(b)(3) based on the agreement's forum selection clause. It also sought dismissal pursuant to CR 12(b)(6), arguing that Microsoft Corporation was not a proper party to the

No. 83486-0-I

lawsuit because Microsoft Ireland was a distinct legal entity. In the alternative, Microsoft argued Bitemojo's claims failed as a matter of law. In response, Bitemojo argued that it was not seeking to enforce the agreement, so its complaint was not subject to the forum selection clause. Bitemojo further argued that the clause was unenforceable because it would prevent it from obtaining relief under the CPA.

The trial court determined that the forum selection clause applied to all of Bitemojo's claims because "without the underlying subscription contract, none of these claims are arising or viable in any way." The court also found that the venue provision of the agreement required the claims "to be brought in Ireland, and that the law of Ireland prevails." It then determined that enforcing the forum selection clause would not "so den[y] the plaintiff of relief or the ability to pursue other claims." Therefore, the trial court granted the CR 12(b)(3) motion to dismiss for improper venue and on that basis, dismissed Bitemojo's complaint with prejudice. It declined to rule on the CR 12(b)(6) motion. Bitemojo appeals.

DISCUSSION

In general, a forum selection clause is prima facie valid and "may be enforced even if it is in a standard form consumer contract not subject to negotiation."[3] Dix v. ICT Group, Inc., 160 Wn.2d 826, 834, 161 P.3d 1016 (2007). However, a court may deny enforcement upon a clear showing that, in the

---

[3] The reason these clauses are presumptively valid is that "enforcement of forum selection clauses serves the salutary purpose of enhancing contractual predictability." Voicelink Data Servs., Inc. v. Datapulse, Inc., 86 Wn. App. 613, 617, 937 P.2d 1158 (1997); see Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). Additionally, such clauses may reduce the costs of doing business, thus resulting in reduced prices to consumers. Carnival Cruise Lines, Inc., 499 U.S. at 594.

No. 83486-0-I

particular circumstance, enforcement would be unreasonable. Id. at 834. A court

may determine that a forum selection clause is unreasonable if

> (i) it was induced by fraud or overreaching, (ii) the contractually selected
> forum is so unfair and inconvenient as, for all practical purposes, to
> deprive the plaintiff of a remedy or of its day in court, or (iii) enforcement
> would contravene a strong public policy of the State where the action is
> filed.

Id. at 834. The party resisting enforcement has the burden of demonstrating that

it is unreasonable. Id. at 835.

The standard for a motion to dismiss for improper venue under CR

12(b)(3) differs from the more familiar standard for CR 12(b)(6) motions.[4]

Voicelink Data Servs., Inc. v. Datapulse, Inc., 86 Wn. App. 613, 624, 937 P.2d

1158 (1997). In assessing a forum selection clause for enforceability, the court

does not accept the pleadings as true. Dix, 160 Wn.2d at 835 (citations omitted).

Rather, the challenging party must present evidence to justify nonenforcement.

Id. Thus, when conducting an analysis under CR 12(b)(3), the court may

consider facts outside the pleadings to assess whether the challenger satisfied

its burden to provide evidence of nonenforceability. Voicelink, 86 Wn. App. at

624-25.

We review a trial court's decision on a CR 12(b)(3) motion to dismiss for

improper venue for abuse of discretion. Dix, 160 Wn.2d at 833. A trial court

---

[4] Under CR 12(b)(6), dismissal is warranted only if the plaintiff cannot prove any set of
facts justifying recovery. Karstetter v. King Cnty. Corr. Guild, 193 Wn.2d 672, 677, 444 P.3d 1185
(2019).

No. 83486-0-I

abuses its discretion if its decision is manifestly unreasonable or based on

untenable grounds. Id. As the Washington Supreme Court has explained,

> If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion. . . . Thus, the abuse of discretion standard gives deference to a trial court's fact-specific determination on enforceability of a forum selection clause, while permitting reversal where an incorrect legal standard is applied.

Id. (internal citations omitted). However, if a question of pure law is involved,

such as whether strong public policy precludes giving effect to a forum selection

clause, the standard of review is de novo. Id. at 833-34. Likewise, the legal effect

of a contract is a question of law subject to de novo review. Keystone Masonry,

Inc. v. Garco Const., Inc., 135 Wn. App. 927, 932, 147 P.3d 610 (2006).

I.      Whether Bitemojo's claims are subject to the forum selection clause

Bitemojo argues the trial court erroneously applied an "arise under"

standard rather than the actual "action to enforce" language of the Azure

agreement's clause when it reasoned that "without the underlying agreement,

none of these claims are arising or viable in any way." According to Bitemojo, this

was legal error because "arise under" was not the language of the forum

selection clause in the agreement. Bitemojo notes that Microsoft "sometimes

drafts broader forum selection clauses," such as the one covering claims "arising

under" the contract at issue in Acharya v. Microsoft Corp., 189 Wn. App. 243,

247, 354 P.3d 908, 910 (2015). Bitemojo further contends its claims are not

"actions to enforce" the contract subject to the forum selection clause because

they do not seek to enforce any obligations in the agreement. Microsoft counters

7

No. 83486-0-I

that an "action to enforce" encompasses "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract."

Bitemojo's arguments about whether the term "action to enforce" includes its claims do not challenge the validity of the forum selection clause. Rather, they raise questions about the meaning and effect of the language. Cf. Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997) (applying de novo review to interpretation of forum selection clause, where parties contested meaning of language, not validity).

No Washington cases directly address whether a forum selection clause that applies to "actions to enforce" an agreement encompasses claims other than contract claims, such as those that sound in tort. Bitemojo cites several cases where courts refused to enforce a forum selection clause using the "action to enforce" language, but none is controlling in Washington. Also, each is distinguishable factually, as the claims in those cases did not require reference to the contract.[5] Cases cited by Microsoft are similarly all from other jurisdictions and also factually distinct.[6]

---

[5] See Melnik v. AAS-DMP Mgmt. L/P, 1998 WL 1748751 at *2 (W.D. Wash. Sept. 1, 1998) (personal injury action by crew member injured on a fishing vessel was not "[a]ny action to enforce the provisions of this crew [employment] contract"); Vankineni v. Santa Rosa Beach Dev. Corp. II, 57 So.3d 760, 762-63 (Ala. 2010) (forum selection clause stating "any action to enforce" a provision in the agreement did not apply to claims of alleged securities act violations and rescission; "enforcement of a contract is the opposite of" rescission); Muzek v. Eagle Mfg. of N. Am., Inc., 2018 WL 5499675, at *2 (E.D. Ky. Oct. 29, 2018) (facts in complaint related to claims of fraudulent inducement to enter agreement were entirely unrelated to stock purchase agreements' terms and enforceability); Jacobson v. Mailboxes Etc. USA, Inc., 646 N.E.2d 741, 745 (1995) (forum selection clause by its terms related only to "actions enforcing this agreement," not to actions based on unlawful conduct that induced a franchisee to sign the agreement).

[6] See Alliance Commc'ns Co-op., Inc. v. Glob. Crossing Telecommc'ns, Inc., 2007 WL 1964271, at *8-12 (D.S.D. July 2, 2007) (forum selection clause covering "any action to enforce or interpret the terms" applied to claims for breach of contract, unjust enrichment, and fraud for

8

No. 83486-0-I

Ultimately, " '[w]hether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case.' " Terra Int'l, 119 F.3d at 693 (quoting Berrett v. Life Ins. Co. of the Sw, 623 F. Supp. 946, 948-49 (D. Utah 1985)). While acknowledging that the scope of a forum selection clause was "a rather case-specific exercise," the court in Terra Int'l nonetheless described different courts' approaches to the question:

> The Third Circuit has indicated that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir.), cert. denied, 464 U.S. 938, 104 S. Ct. 349, 78 L. Ed. 2d 315 (1983). In Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir.1988), the Ninth Circuit stated that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." The First Circuit has phrased its test slightly differently, explaining that "contract related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).[7]

"failing to pay the correct price"); LTVN Holdings LLC v. Odeh, 2009 WL 3736526, at *5 (D. Md. Nov. 5, 2009) (forum selection clause stating that "[a]ny action to enforce this agreement shall be brought in the federal or state courts located in the state of Maryland" encompassed claims of copyright infringement, Lanham Act, breach of contract, unjust enrichment, conversion, and false appropriation because they related to use of videos without proper attribution, and the contract prohibited such use); Auld v. Daugherty Sys., Inc., 2015 WL 5970731, at *2 (D. Minn. Oct. 13, 2015) (clause limiting venue to the Eastern District of Missouri "[i]n any suit to enforce this Agreement" applied to breach of contract, promissory estoppel, and whistleblower claims); C. Thorrez Indus., Inc. v. LuK Transmissions Sys. LLC, 2010 WL 1434326, at *5 (N.D. Ohio 2010) (clause stating that "[a]ny actions or proceedings to enforce this contract shall be venued in Wayne County, OH" applied to claims for unjust enrichment and "account stated" that were "inseparable" from the contract); Third Ave. Tr. v. Suntrust Bank, 163 F. Supp. 2d 215, 220 n.3 (S.D.N.Y. 2001) (conversion and unjust enrichment claims were governed by a forum selection clause that applied to "any action to enforce, interpret or construe any provision of this agreement," where the parties also "irrevocably waive[] any defense of improper venue or forum non conveniens").

7 In Coastal Steel Corp., the relevant contract clause stated, "In the event of any dispute arising the same shall be determined by the English Courts of Law." 709 F.2d at 193. In Manetti-

No. 83486-0-I

Terra Int'l, 119 F.3d at 694 (determining that under language of the agreement and facts of the case that the First Circuit's approach merited application).

Microsoft urges the court to apply the First Circuit's analysis of a similar forum selection clause in Lambert v. Kysar, 983 F.2d 1110. In Lambert, the agreement provided, "In the event any action is brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington."[8] Id. at 1112. Despite this clause, the unsatisfied buyer of Christmas trees filed suit in a Massachusetts state court claiming misrepresentation, breach, and unfair business practices. Id. The seller removed to federal court and moved to dismiss under Fed. R. Civ. P. 12(b)(3) and 12(b)(6). Id. The buyer argued that the parties' forum selection clause did not apply to its allegations of tortious conduct relating to the formation, rather than the performance, of their contract. Id. at 1121. But the court disagreed, reasoning, "We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute." Id.

The Lambert court noted that the Supreme Court had held that a forum selection clause is not enforceable if "the inclusion of that clause in the contract was the product of fraud or coercion"—i.e., an allegation of fraud in a transaction generally was insufficient to apply the fraud exception to the enforceability of a

Farrow, the forum selection clause provided that Florence would be the forum for resolving disputes regarding "interpretation" or "fulfillment" of the contract. 858 F.2d at 513-14.

[8] Moreover, the Lambert court applied Washington law to determine the enforceability of the forum selection clause. 983 F.2d at 1118-19 (analyzing choice of law). Nevertheless, in its analysis of the application of the forum selection clause to the noncontract tort claims, the court relied on federal cases. 983 F.2d at 1121-22. This is not surprising, as this question remains unaddressed by Washington courts.

No. 83486-0-I

forum selection clause. Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974) (emphasis in original)). However, the Lambert court reasoned, "The better general rule . . . is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Lambert, 983 F.2d at 1121-22.

Here, it is not necessary to adopt the Lambert court's "same operative facts" rule to analyze whether a forum selection clause applies to tort claims, and we decline to do so. Instead, we agree with the court in Terra Int'l that the analysis of whether noncontract claims, including tort claims, are covered by forum selection clauses is a "case-specific exercise" and "depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." Terra Int'l, 119 F.3d at 693 (internal quotations omitted).

Microsoft's deletion of Bitemojo's data is at the heart of the parties' dispute. The online subscription agreement, which includes the forum selection clause, governs the relationship and obligations between Microsoft and Bitemojo. Even if Bitemojo contends its claims are not directly based on the agreement, an examination of the agreement is nevertheless required to interpret the forum selection clause and determine its scope. Thus, we use the standard tools of contract interpretation and apply the forum selection clause to the specific claims Bitemojo raises in this case.

When interpreting a contract, our primary objective is to discern the parties' intent. Tanner Elec. Co-op. v. Puget Sound Power & Light, 128 Wn.2d

11

No. 83486-0-I

656, 674, 911 P.2d 1301 (1996). We view the contract as a whole, interpreting particular language in the context of other contract provisions. See Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000). "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005). This meaning may be ascertained by reference to standard English dictionaries. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co., 126 Wn.2d 50, 77, 882 P.2d 703 (1994).

Turning to the online services agreement, we note it includes an integration clause that states that "[t]his agreement is the entire agreement concerning its subject matter . . . ." The forum selection clause is reciprocal: "If we bring an action to enforce this agreement, we will bring it in the jurisdiction where you have your headquarters. If you bring an action to enforce this agreement, you will bring it in Ireland." The agreement includes only one exception: "This choice of jurisdiction does not prevent either party from seeking injunctive relief in any appropriate jurisdiction with respect to violation of intellectual property rights." As the claims here do not relate to intellectual property rights, the relevant question is whether the parties intended the forum selection clause to cover claims such as Bitemojo's.

The dictionary definition of "enforce" includes "to give force to: reinforce," and "to put in force: cause to take effect: give effect to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 751 (2002). Thus, the forum selection clause applies

12

No. 83486-0-I

to claims that seek "to give force to," "cause to take effect," or "give effect to" the agreement. Reading the contract as a whole, because the agreement constitutes "the entire agreement concerning its subject matter," we determine that the parties intended that the forum selection clause apply to all claims concerning the subject matter of the agreement, with the sole exception of claims relating to intellectual property rights.

Next, we look at the facts in this case to determine whether the claims concern the subject matter of the agreement. Bitemojo's promissory estoppel claim alleges that Azure subscription support engineers made promises regarding the retention of Bitemojo's data that they then breached. Similarly, Bitemojo's breach of contract claim alleges that the statements by the engineers to Weiss regarding account suspension created a binding contract, which then was breached.[9] Specifically, Bitemojo claims the engineers made enforceable promises that the subscription was "suspended" and that they would "delay [its] payment," and that these promises were entirely separate from the agreement between Bitemojo and Azure.

But Bitemojo's interactions with Azure's engineers did not occur in a vacuum. Those interactions all related to services that Microsoft Azure agreed to provide to Bitemojo pursuant to the online services agreement. Section 3.c of this agreement addresses "Suspension":

> c.     **Suspension.** We may suspend your use of the Online Services if: . . . (3) you do not pay amounts due under this agreement . . . . If one or more of these conditions occurs, then:

---

[9] At oral argument, Bitemojo confirmed its position that the engineers' statements created a separate contract and were not modifications to the original services agreement.

No. 83486-0-I

> (i) For Limited Offerings, we may suspend your use of the Online Services or terminate your Subscription and your account immediately without notice.
>
> (ii) For all other Subscriptions, a suspension will apply to the minimum necessary part of the Online Services and will be in effect only while the condition or need exists. We will give notice before we suspend, except where we reasonably believe we need to suspend immediately. We will give at least 30 days' notice before suspending for nonpayment. If you do not fully address the reasons for the suspension within 60 days after we suspend, we may terminate your Subscription and delete your Customer Data without any retention period. We may also terminate your Subscription if your use of the Online Services is suspended more than twice in any 12-month period.

Bitemojo's promissory estoppel and breach of contract claims require determining whether Bitemojo's two requests to suspend its account and its subsequent nonpayment triggered Azure's rights under this provision to terminate Bitemojo's subscription and delete its data. Because these claims require interpreting and applying Section 3.c of the agreement, the forum selection clause applies to them.

The conversion and CPA claims likewise are governed by the agreement because they are claims about data deletion, a subject matter of the agreement. The conversion claim alleges Azure "permanently . . . destroyed" its personal property "without consent or permission . . . and without contractual . . . authority." Bitemojo's CPA claim alleges that despite Microsoft subscription support engineers' promises to excuse nonpayment and to continue retaining Bitemojo's data, Microsoft's systems deleted its data without procedures for archiving and recovering the data. Bitemojo contends that Microsoft's conduct is deceptive because consumers are likely to be misled when Microsoft's

14

No. 83486-0-I

subscription support engineers make promises that Microsoft then refuses to honor and that "Microsoft's systems" deleted data without proper procedures to archive or recover mistakenly deleted data. Yet the factual basis for the allegedly deceptive conduct is Microsoft support engineers' unique interactions with Bitemojo about Bitemojo's account and deletion of Bitemojo's data. This lawsuit is not a class action, and there are no allegations of similar promises to anyone else, nor deletion of anyone else's data.

As with the promissory estoppel and contract claims, the conversion and CPA claims are not independent from the parties' preexisting relationship. Without the online subscription agreement, Microsoft Azure would not have any of Bitemojo's data in the first place. According to Microsoft, section 1.d of the agreement limits its responsibility for customer data by stating, "Microsoft does not and will not assume any obligations with respect to Customer Data . . . ." Because Bitemojo's conversion and CPA claims require interpretation of the parties' rights and obligations under the agreement, the parties intended that the forum selection clause apply to such claims.

"We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [other] claims' in the context of a contract dispute." Lambert, 983 F.2d at 1121. We hold that Bitemojo's promissory estoppel, breach of contract, conversion, and CPA claims all concern the subject matter of the online services agreement, and the parties' intent was that Bitemojo bring such claims in Ireland. Thus, the trial court did not abuse its discretion by dismissing the promissory estoppel, contract, and

15

No. 83486-0-I

conversion claims under CR 12(b)(3). As for the CPA claim, even if the forum selection clause encompasses it, under <u>Dix</u>, we must next analyze whether applying the clause to that claim would be unreasonable.[10]

II.    <u>Whether enforcement of the forum selection clause to foreclose the CPA claim would be unreasonable</u>

The trial court concluded that under <u>Dix</u>, enforcement of the forum selection clause to foreclose the CPA claim did not contravene strong public policy because Bitemojo could pursue other claims and was not so denied relief that a court should override the forum selection clause. Bitemojo argues this was error. We disagree.

Here, the parties did not dispute that the contract, by its terms, would require both litigation in Ireland and application of Irish law. Thus, Bitemojo argues that <u>Dix</u> requires that "[t]he undisputed fact that Bitemojo cannot pursue a CPA claim in Ireland should have ended the question of enforceability under <u>Dix</u>, since it . . . would be left with 'no feasible avenue for seeking relief for violations of the CPA.' " Br. of App. at 30 (quoting <u>Dix</u>, 160 Wn.2d at 841).

In <u>Dix</u>, the plaintiffs were AOL users who claimed AOL was double-billing them and providing deceptive customer service to avoid refunds. <u>Id.</u> at 830. They filed a class action alleging conversion, unjust enrichment, and violation of the CPA. <u>Id.</u> at 830-31. The complaint alleged that because the amount of damage owed any one class member was small, it was impracticable and inefficient to pursue separate actions. <u>Id.</u> at 831. However, their agreement with AOL

---

[10] Bitemojo does not claim enforcement of the forum selection clause is unreasonable with respect to the non-CPA claims.

16

No. 83486-0-I

contained a provision giving Virginia exclusive jurisdiction over any claim or dispute with AOL, and Virginia law precluded class action lawsuits. Id. at 829, 842. The court analyzed the history of the CPA, noting that the individual consumer enforcement action to vindicate the public interest was a significant aspect of the CPA's dual enforcement scheme. Id. at 837. Further, "class suits are an important tool for carrying out the dual enforcement scheme." Id. Thus, "a forum selection clause that seriously impairs a plaintiff's ability to bring suit to enforce the CPA violates the public policy of this state." Id. The court then reasoned that a clause that impairs a plaintiff's ability to pursue a small value claim "by eliminating class suits in circumstances where there is no feasible alternative for seeking relief" violated public policy and was unenforceable. Id.

Bitemojo claims that the strong public policy expressed in the CPA is an "independent" ground for unenforceability, separate from the availability of another avenue for relief.[11] In other words, Bitemojo's reading of Dix is that because Washington has a strong public policy of allowing private enforcement

---

[11] Bitemojo points to Oltman v. Holland Am. Line USA, Inc., 163 Wn.2d 236, 253, 178 P.3d 981 (2008), for support of the concept that the public policy basis for refusing to enforce a forum selection clause is independent from availability of relief. But Oltman did not so hold. Rather, it merely cited the discussion in Dix in which the court synthesized federal cases to identify three bases on which forum selection clauses may be deemed unreasonable. The first, not mentioned in Oltman, is when the clause was induced by fraud or overreaching. Dix, 160 Wn.2d at 834. The second is when "the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or of its day in court," and the third is when "enforcement would contravene a strong public policy of the State where the action is filed." Id. The court in Oltman merely restated the last two bases as follows: "a forum selection clause can be found to be unenforceable if the party challenging enforceability establishes that the contractually selected forum is so unfair and inconvenient that the plaintiff is essentially denied his day in court or that enforcement would contravene strong public policy of the state where the action is filed." 163 Wn.2d at 253. Bitemojo never challenged the forum selection clauses here on the second basis, that the selected forum was "unfair and inconvenient," but rather, only on the third basis, that enforcement "would contravene a strong public policy."

No. 83486-0-I

of the CPA, no forum selection clause can ever be enforceable if it would foreclose plaintiff's CPA claim. But the holding in Dix is not that broad.[12]

In West Consultants, Inc., v. Davis, 177 Wn. App. 33, 310 P.3d 824 (2013), this court applied Dix and determined that even though a forum selection clause foreclosed a CPA claim, enforcing the forum selection clause was not unreasonable. The plaintiff, West Consultants, purchased software that it claimed did not work properly and filed a CPA claim, as well as claims for breach of implied warranties of merchantability and fitness for a particular purpose and unjust enrichment. Id. at 37. The alleged CPA violation was defendant's "selling a poor quality product" and failing to provide installation, training, and maintenance to render the product useful. Id. at 40. The license agreement required bringing any claim "relating in whole or in part to this Agreement" to a Virginia court, a forum in which the CPA claim would be barred. Id. at 37. West Consultants conceded that its claims, including its CPA claim, "related to" the license agreement. Id. at 40. Then, this court went on to address whether enforcing the forum selection clause would be unreasonable because it would violate the CPA's public policy goals. Id. at 42.

The West Consultants court quoted Dix's holding: " 'a forum selection clause that seriously impairs the plaintiff's ability to go forward on a claim of small value by eliminating class suits in circumstances where there is no feasible

---

[12] Microsoft's argument that Washington's strong public policy as stated by its CPA can be invoked only by Washington residents is also not correct. "Under the CPA, an out-of-state plaintiff may bring a claim against a Washington corporate defendant for allegedly deceptive acts. Similarly, an out-of-state plaintiff may bring a CPA claim against an out-of-state defendant for the allegedly deceptive acts of its in-state agent." Thornell v. Seattle Serv. Bureau, Inc., 184 Wn.2d 793, 804, 363 P.3d 587 (2015).

18

No. 83486-0-I

alternative for seeking relief violates public policy and is unenforceable.' " Id.

(quoting Dix, 160 Wn.2d at 837). It then contrasted the facts from those in Dix,

reasoning that because West Consultants sought substantial damages,

$119,544, did not seek to bring a class action, and presented no evidence to the

trial court that it had no feasible alternative for seeking relief, it had not met its

burden to show the forum selection clause was unreasonable even though it

foreclosed the CPA claim.[13] Id. Thus, West Consultants demonstrates that Dix

does not stand for the proposition that applying a forum selection clause to

foreclose a CPA claim is always unreasonable. Instead, we must assess the

particular facts alleged in the claim as well as the specific public policy to

determine if foreclosing the particular claim "would contravene a strong public

policy." Dix, 160 Wn.2d at 834.

Bitemojo also relies on Acharya v. Microsoft Corp., 189 Wn. App. at 257,

to suggest that the proper focus should be on "a public policy in the enforcement

of [a] particular Washington statute, and not the feasibility or inconvenience of

pursuing other common law claims." App. Reply Br. at 13-14. But Bitemojo

misconstrues Acharya.

In Acharya, the plaintiff accepted a London-based position with a foreign

subsidiary of Microsoft and signed an employment contract specifying that any

dispute arising under the contract would be governed by Swiss law in Swiss

---

[13] The plaintiff in West Consultants also argued on appeal that its claims against one of the defendants would be time-barred in Virginia and that pursuing its claims in either state or federal court in Virginia would be "cost prohibitive." West Consultants, 177 Wn. App. at 42. However, because the trial court did not consider this argument timely, this court also declined to address it. Id. at 43.

19

No. 83486-0-I

courts. Id. at 247. The plaintiff suffered gender-based discrimination in her London job and after returning to Washington, sued Microsoft. Id. at 248-49. Critical to the court's analysis was that "[u]nder Washington law, the right to be free from discrimination is nonnegotiable and cannot be waived in contract." Id. at 255. "[U]nder the forum selection clause and the choice of law provision, Acharya's WLAD (Washington Law Against Discrimination) claim would not be cognizable." Id. Therefore, the court held that "[i]t would be unreasonable to enforce the forum selection and choice of law clauses" to preclude Acharya from pursuing her WLAD claims. Id. at 255-56. It also rejected Microsoft's arguments that the parties had agreed to the inconvenient forum. It reasoned that "litigation in the designated forum, together with the choice of law clause, would foreclose Acharya's ability to pursue her claim for discrimination cognizable under WLAD," and public policy prohibited WLAD rights from being waived by contract. Id. at 257. Thus, even if the parties had agreed to litigate in Europe, "foreseeable inconvenience" did not outweigh this "significant public policy interest." Id.

While Bitemojo is correct that the Acharya court rejected arguments based on the inconvenience of litigating in the foreign forum, it did not abandon or disregard the inquiry set out in Dix as to whether "there is no feasible alternative avenue for seeking relief" for a CPA claim. Acharya and Dix involved different kinds of claims and, thus, different public policy interests. To determine whether enforcement of a forum selection clause that forecloses a CPA claim would contravene a strong public policy, Dix and West Consultants require us to consider both the specific claim and whether the forum chosen by the parties

20

No. 83486-0-I

provides "no feasible alternative avenue for seeking relief on such claims." Dix, 160 Wn.2d at 842-43. This analysis turns on the specific facts of the case.

Where the factual basis for the CPA claim is the same as that in other claims, the plaintiff may still have a feasible alternative avenue to seek relief for the conduct. As in West Consultants, that is the case here. While Bitemojo has not specified the amount of damages it seeks, its complaint alleges Microsoft deleted the products and customer data of a company worth millions, a leader in the app-based travel industry. Also, Bitemojo has not filed a class action. This case differs from Dix, where the public policy at stake was an individual's ability to pursue a small damages CPA claim, and this ability was "seriously impaired" because Virginia did not allow class actions. Here, Bitemojo has not established that it cannot pursue a contract claim for the complained-of conduct in the parties' chosen forum, Ireland. Enforcing the forum selection clause to foreclose Bitemojo's CPA claim does not contravene a strong Washington public policy and would not be unreasonable.

Bitemojo has not met its "heavy burden" to present evidence to justify nonenforcement. Dix, 160 Wn.2d at 835. The trial court did not err by enforcing the agreement's forum selection clause to foreclose the CPA claim.

CONCLUSION

We hold that Bitemojo's claims are subject to the forum selection clause's requirement that the claims be litigated in Ireland. Further, Bitemojo has not met its heavy burden to show the agreement's forum selection clause is

21

No. 83486-0-I

unreasonable as applied to its CPA claim. Therefore, the trial court properly

granted Microsoft's CR 12(b)(3) motion to dismiss Bitemojo's claims.

Affirmed.

Chung, J.

WE CONCUR:

Coburn, J.

Brennan, J